COMMONWEALTH vs. RAYMOND SOUZA
(and thirteen companion cases[1]).

No. 93-P-1494.

Middlesex. March 15, 1995. - August 17, 1995.

Present: BROWN, KASS, & PORADA, JJ.

*Evidence*, Privileged communication, Relevancy and materiality, Sexual conduct. *Witness*, Privilege. *Social Worker. Privileged Communication. Practice, Criminal*, Severance, Trial of defendants together, Judicial discretion, Continuance, Required finding, Sentence.

At the trial of sexual offenses involving children, the trial judge properly excluded, on relevancy grounds, certain proffered evidence, including testimony from the parents' psychotherapists, with respect to the children's mothers' previously repressed memories of sexual abuse as children and evidence of marital discord in one child's family. [106-109]

There was no merit to criminal defendants' claim that the judge's ruling excluding certain proffered evidence, including psychotherapists' notes, thereby barred defense counsel from exploring the issue of certain witnesses' bias. [109-110]

At the trial of two defendants on indictments for sexual offenses involving two child victims, the judge did not abuse his discretion in denying the defendants' motion to sever indictments with respect to each victim and to sever the defendants' trials. [110-112]

There was no abuse of discretion by the judge at a criminal trial in denying defendants' motion for a continuance based on the prosecution's not having produced certain therapy records, where the prosecution had no duty to produce the materials, which in any event were not demonstrated to be useful to the defense. [112-113]

Evidence at a criminal trial was sufficient to permit the finder of fact to conclude that the offenses charged were proved beyond a reasonable doubt. [113-114]

There was no merit to defendants' claim that the sentence imposed upon their convictions for rape of a child was so unduly harsh as to give rise to a presumption they had been punished for proceeding to trial. [114]

---

[1]Six of the companion cases are against Raymond Souza, and seven are against Shirley Souza.

INDICTMENTS found and returned in the Superior Court Department, eight on April 17, 1991, and six on November 12, 1991.

A motion to sever indictments was heard by *Robert H. Bohn, Jr.*, J., and the cases were heard by *Elizabeth J. Dolan*, J.

*Daniel R. Williams*, of New York, for Shirley Souza.

*William M. Kunstler*, of New York, for Raymond Souza.

*Catherine E. Sullivan*, Assistant District Attorney (*Sheila M. Calkins*, Assistant District Attorney, with her) for the Commonwealth.

KASS, J. Three grandchildren of the defendants, Shirley and Raymond Souza, complained that their grandparents had sexually molested them. Those complaints, the grandparents said in their defense, were false — the product of family hysteria and parental suggestion. In aid of that theory, defense counsel sought to cross-examine the mothers of the complaining grandchildren about the mothers' recovery of previously repressed memories of sexual abuse that they themselves had suffered. The trial judge excluded questioning along those lines, and that is a claim of error on appeal. Another claim of error is the denial of motions to try separately the defendants and the indictments based on the complaints of the grandchild C and the grandchild N. The resulting joinder of defendants and indictments, the defendants argue, produced an unfairly compounding effect. The defendants were found guilty of various crimes involving sexual abuse.[2] We conclude, upon study of the record, that neither of those major claims of error, nor the several others raised

---

[2]The indictments name C and N as complainants. Defendant Raymond Souza was found guilty on four indictments of rape of a child under the age of sixteen, two indictments for indecent assault and battery on a child under the age of fourteen, and one indictment for assault and battery. Defendant Shirley Souza was found guilty on three indictments for rape of a child under the age of sixteen, three indictments for indecent assault and battery on a child under the age of fourteen, and one indictment for assault and battery. (Defendant Raymond Souza was found not guilty on one indictment for assault and battery; defendant Shirley Souza was found not guilty on one indictment for rape).

by the defendants, is sound and affirm the judgments of conviction.

The case was tried before a judge of the Superior Court as fact finder, the defendants having elected to waive a jury trial. The trial judge, although not required by rule so to do,[3] made extensive findings of fact, and we use her findings as the primary source of the factual context. Two of the grandchildren who said their grandparents had sexually abused them were children of a son of the defendants, Daniel,[4] and his wife, Harriet, and two were children of a daughter, Sally. There were three additional siblings of Daniel and Sally.

One of those three siblings, Sandra, had experienced dreams which she interpreted as signifying she had been sexually abused as a child by her father, one of the defendants. Sandra communicated her unease in June, 1990, to her sister Sally, the mother of the complainants N and M,[5] both girls, and to her sister-in-law, Harriet, mother of the complainant C, a girl, and of J, a boy who is not a complainant in this case. Sally, who was close to her parents, was upset and offended by the suggestion that her parents were child molesters and broke off contact with Sandra. When Harriet subsequently told Sally of her apprehension that C and J had been sexually abused by the defendants, Sally cut herself off from Harriet and her family as well.

At that point, C and N had already exhibited aberrant behavior, such as compulsive individual masturbation and sexual stimulation of siblings, regressive bedwetting and wetting of pants, extremes of rage associated with visits to the grandparents, acting out sexually with dolls, unusual and atypical crying spells, and atypically destructive conduct. When their parents stopped leaving them in the care of their grandparents, the aberrant behavior of C and N diminished markedly. Throughout their early childhood, N and M and their par-

---

[3] Compare Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974).

[4] Except for the names of the defendants, the names of members of the Souza family are pseudonyms.

[5] Indictments arising out of charges made by M were severed.

ents had lived one house away from their grandparents and spent a part of every day with them.

As to the specifics of sexual abuse, N said both grandparents had digitally penetrated her vagina and that her grandfather had digitally penetrated her rectal area. She testified to episodes of cunnilingus, of being required to place her hand in her grandmother's vaginal (it felt "slimy and icky") and anal areas, to place her hand on her grandfather's penis, and to place her hand in his anus. The grandparents picked at her nipples.

C, who spent nights at the defendants' home less frequently, testified to digital penetration of her vaginal and rectal areas, and her grandparents pinching her nipples. "Papa" made her touch and "wiggle" his penis, put her finger inside his anus, and pinch his nipples. "Grammy" made her touch Grammy's vagina (it felt "soft and wet") and "bum."

1. *Claim of curtailed examination and cross-examination.* To buttress their case that the grandchildren's accusations resulted from parental hysteria, turmoil, and pressure, defense counsel wished to inquire of the grandchildren's mothers, Sally and Harriet, about their recovery of previously repressed memories of their own sexual abuse by relatives. Counsel also wanted to question Sally's and Harriet's therapists about their patients' evolving convictions that they had been sexually abused when they were children. The trial judge excluded that line of inquiry, a ruling that the defendants argue deprived them of the right to relevant — even vital — cross-examination and to confront witnesses against them.

Specifically, the judge refused to permit: 1) direct examination of Sally's therapist about the evolution of Sally's beliefs of her own sexual abuse by the defendants; 2) direct examination of Harriet's therapist about Harriet's belief that *her* grandfather had abused her; 3) cross-examination of Sally about her own memories of abuse that surfaced in June, 1990, and January, 1991, and about marital discord between Sally and her husband. Defense counsel urged that

exploration of Sally's and Harriet's relatively recently acquired convictions that they had been sexually molested bore on the fevered family context in which the grandchildren levelled their charges; Sally's troubled marriage further rounded out the picture of upheaval. The judge was not persuaded. She was prepared to allow defense counsel to explore Sally's and Harriet's recovered memories of molestation if any evidence were adduced that Sally or Harriet (or, for that matter, Sandra, the sister who had first raised the subject) had talked about sexual touchings to the complaining grandchildren, or that Sally or Harriet had influenced their children's disclosures by persistent questioning or by suggestion. The defense was unable to lay such a foundation, although counsel were permitted to explore with Sally and Harriet whether they had suggested or encouraged the children's talk of touching by their grandparents. (C was also questioned on this subject.)

What Sally and Harriet had communicated to their therapists was, as an initial matter, privileged. See the psychotherapist-patient privilege conferred by G. L. c. 233, § 20B, and the social worker-client privilege conferred by G. L. c. 112, § 135A. Sally and Harriet, when asked by the judge, asserted their privileges and those of their children. Their privileges were, however, subject to incursions by the defendants in the manner set forth in *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 881-884 (1991), and *Commonwealth* v. *Figueroa*, 413 Mass. 193, 203 (1992).[6]

In response to *Stockhammer* motions on behalf of the defendants, two Superior Court judges (other than the trial judge) who dealt with various pretrial aspects of the case granted defense counsel access to notes of the therapists of the children and their parents.[7] The trial judge then ruled that the defense would be permitted to use in their entirety

---

[6]The more definitive prescription of *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993), was not published until some seven months after the Souza trial.

[7]The motion judges also granted defense counsel access to psychiatric records of Harriet and Daniel, Harriet's husband and the father of C. It appears to be undisputed that Daniel had sexually molested C.

the children's therapy records in examination and cross-examination. As to the mothers, the trial judge ruled that certain portions of the therapy notes were manifestly immaterial, e.g., that Sally had been a rape victim earlier in her life, her marital strains, and her use of psychotropic prescription drugs. What else might be referred to, the judge said, she would rule on as the presentation of the evidence developed. The judge left no doubt, however, that she regarded Sally's and Harriet's recollections of their own sexual molestation as off limits unless the defendants made an offer of proof of some connection between those recollections and the complaining children. To date, the cases, e.g., *Stockhammer, Figueroa, Bishop* and *Commonwealth* v. *Jones,* 34 Mass. App. Ct. 683, 685 (1993), have involved the therapist records of victim witnesses. As to the otherwise privileged records of witnesses such as Sally and Harriet, who were not the complaining witnesses, a judge might reasonably hold access on a somewhat tighter leash.

Obviously a trial judge may curtail direct examination or cross-examination if the questions are not relevant or if, as the judge here ruled, the relevance is greatly attenuated. See *Commonwealth* v. *Chasson,* 383 Mass. 183, 187 (1981); *Commonwealth* v. *Johnson,* 16 Mass. App. Ct. 935, 936-937 (1983); *Commonwealth* v. *Quegan,* 35 Mass. App. Ct. 129, 132 (1993). Appellate courts accept the trial judge's resolution of questions of relevance unless there has been "palpable error." *Commonwealth* v. *Young,* 382 Mass. 448, 463 (1981). If the line of examination appears to do no better than permit the finder of fact to speculate or suppose about the facts, then the judge may cut off the questioning. *Commonwealth* v *Chretien,* 383 Mass. 123, 138 (1981). *Commonwealth* v. *O'Connor,* 407 Mass. 663, 671-672 (1990).

We think the trial judge was on sound ground when she ruled, in effect, that on the basis of what was offered, she could not connect the dots between the mothers' recollections of their own abuse and the marital tension of one of them with the children's accusations and an atmosphere of hysteria. Evidence should not be too weak in probative quality. Cf.

*Commonwealth* v. *Graziano*, 368 Mass. 325, 329-330 (1975). In any event, the subjects of family pathology and hysteria were developed by evidence that did come in. Defense counsel were permitted, using therapists' notes, to inquire about: C's father, Daniel, desiring on occasion to have his wife call him Cheryl and Daniel's abuse of C; Harriet discussing with Sally that C had been abused and that she thought Sally and Sally's daughter, N, had been abused; Sally ultimately coming to the belief that she had been abused by her parents; and examination of Harriet about her maturing conviction that she had been physically abused as a child by her grandfather. Viewed against the backdrop of the over-all record, the position of the defendants, that the trial judge torpedoed the hysteria defense by critical and erroneous exclusions, is unpersuasive.

The same may be said of the claim that the defendants were denied the right to use therapists' notes to establish bias of Harriet and Sally against the defendants. Notes were allowed to be used to buttress other evidence that relations between Harriet and the defendants were unfriendly, that the defendants had never fully approved of her, and that she felt their disapproval. As to Sally, we read the defense theory as not founded on any inherent bias by her against the defendants. To the contrary, the defendants emphasized the close bonds between Sally and her parents and her long refusal to entertain the suspicions that Harriet and Sandra were inciting. If Sally became hostile, it was only after her own children, N and M, had said that their grandparents had molested them and Sally had come to believe that had happened. During one session (on March 12, 1991) with Sally, her therapist noted: "Patient wants them to pay for what they have done." That occurred after Sally had become convinced her children had been molested by her parents. During the entire examination by defense counsel of Sally's therapist, during which counsel made extensive use of the therapist's notes, neither defendant's lawyer asked about the note that Sally wanted her parents to pay for what they had done. Defense counsel's decision to bypass the "wants them

to pay for what they have done" note makes hollow the claim that they were barred from exploring Sally's bias because they were not permitted to explore the mechanism of Sally's recollection of her own molestation.

2. *Denial of the motion to try the indictments and the defendants separately.* Before trial, the Souzas moved to sever the indictments pertaining to each of the complaining grandchildren, N, C, and M, i.e., that the indictments be tried separately, and that each of the defendants be tried separately. Their reason for severances was that proof of multiple instances of sexual molestation involving multiple victims and the two related defendants would have a compounding effect: proof in a single case might not persuade the fact finder beyond a reasonable doubt, but proof of roughly equal potency pertaining to other victims or another defendant might, through cumulative effect, strike the fact finder as more plausible.

The judge who heard the motions to sever (it was not the trial judge) denied them, except for the indictments involving the grandchild, M. M's accusation was solely against the grandmother, and the motion judge thought that inclusion of another grandchild victim would unfairly prejudice the grandfather. Adding a third victim to the picture, who had not spoken against the grandfather, would tend to reinforce the case involving the other two victims which was directed at both grandparents. By contrast, the cases of the grandchildren C and N were related in terms of the defendants, the character of the conduct alleged, the ages of the victims, the family relationships, and the times when the offenses were said to have occurred. Joinder, the motion judge added, would avoid successive trials and successive calling of child witnesses. He denied the motion to try separately the cases arising out of the complaints of C and N and denied the motion to try the defendants separately.

That denial, the Souzas argue, was error and deprived them of due process of law. The allegations of C and N, the Souzas contend, were not so similar as the judge thought and, indeed, they further argue, he was led into error by the

Commmonwealth's mischaracterization of the evidence at
the motion stage.[8]

Whether to join or sever offenses and defendants is left to
the sound discretion of the trial court judge. *Commonwealth
v. Gallison*, 383 Mass. 659, 671 (1981). *Commonwealth* v.
*Mamay*, 407 Mass. 412, 416 (1990). *Commonwealth* v.
*Doyle*, 5 Mass. App. Ct. 544, 547 (1977). Rule 9 of the
Massachusetts Rules of Criminal Procedure, 378 Mass. 859
(1979), allows relatively free joinder if the offenses are re-
lated in the sense that they are based on the same criminal
conduct, represent a series of episodes connected together,
are of similar character, or represent a common pattern. See
also Smith, Criminal Practice and Procedure §§ 1054-1056
(2d ed. 1983).

When, as here, the defendants argue that joinder produces
an unfair spillover effect, a fair question on appeal is
whether, if severed, the evidence pertaining to one victim
would have been allowed in a trial based on the complaint of
the other victim. *Commonwealth v. Gallison*, 383 Mass. at
672. *Commonwealth* v. *Helfant*, 398 Mass. 214, 229-231
(1986). Evidence of other criminal behavior is inadmissible
to prove the propensity of the accused to commit the offense
charged but it is admissible "for other relevant probative
purposes." *Commonwealth* v. *Chalifoux*, 362 Mass. 811,
815-816 (1973). One of those purposes is to show "a com-
mon pattern or course of conduct." *Commonwealth* v. *King*,

---

[8]Only N alleged that her grandparents stuck their heads, hands, and
elbows in her "pee-pee." N mentioned use of a big machine located in her
grandparents' basement to penetrate her at the push of a button; C testi-
fied to having been placed in a cage in the basement of the grandparents'
home without any clothes on. N remembered being alone while abused; C
remembered N and M being present. C testified that her grandparents had
covered her mouth with scotch tape to prevent her from screaming and
had tied her to a bedpost with brown rope; N said that her grandparents
had tied a shoelace around her neck and had squeezed and pulled at it.
The trial judge did not find the testimony about the cage or the machine
believable. She discounted some of the children's other testimony as well.
N's allegations spanned a thirty-two month period during which she was
from two years of age to four years, eight months; C's a twelve-month
period, during which she was four to five years of age.

387 Mass. 464, 472 (1982). *Commonwealth* v. *Helfant,* 398 Mass. at 224-225. In terms of locale, time period, relationship to the accusers, and many similarities in the nature of the acts charged, the evidence of N would have been admissible in a trial based on the charges of C, and vice versa. See also *Commonwealth* v. *Feijoo,* 419 Mass. 486, 494-495 (1995); *Commonwealth* v. *Sylvester,* 13 Mass. App. Ct. 360, 361-363 (1982), *S.C.,* 388 Mass. 749, 753-758 (1983), where, as here, the sexual abuser was in a position of authority and trust.

In the instant case, the related quality of the offenses, the great likelihood that the evidence concerning one alleged victim would be admissible in a separate trial arising out of the complaint of the other victim, and the relative futility and drain of separate trials were factors on which the motion judge properly denied the motions to sever indictments and defendants.

We do not think the assertion of the defendants that the Commonwealth misrepresented the common quality of the charges by C and N stands up under scrutiny. The incidents spanned overlapping time periods; both children were preschoolers; the Souzas had similar access, i.e., they acted as child caretakers while the parents were out; the abuse took place in the Souza home; and the digital penetration, fellatio, cunnilingus and pinching of nipples were of similar character. One child, N, on medical examination, exhibited an abnormally distended anus, and the other, C, an anal tear.

There is also an element of contradiction to the defendants' insistence that the joinder of defendants and indictments prejudiced them unfairly. Although the separate complaints must have had a compounding effect, they also supplied the basis for the core of the Souzas' defense, that they were the victims of a family-wide hysteria.

3. *Other issues.*

(a) *Denial of continuance.* Trial in this case was originally scheduled for March 30, 1992, then continued some six or seven times, and finally set down for January 14, 1993. On December 29, 1992, the defendants moved for a continuance,

alleging that the Commonwealth had not been forthcoming with essential discovery material. The motion was denied by successive Superior Court judges and again denied by the trial judge, when it was renewed before her at the commencement of trial on January 21, 1993. The refusal to grant a continuance is so vested in the sound discretion of the trial court judge that only a patent abuse of that discretion warrants a reversal. *Commonwealth* v. *Funderberg*, 374 Mass. 577, 580 (1978). *Commonwealth* v. *Hartman*, 404 Mass. 306, 315-316 (1989).

Of particular concern to the defendants was their inability to obtain therapy records of Daniel (a son of the defendants and father of C). Why it was the prosecution's duty to produce that material is not apparent. If the defense wanted Daniel as a witness and his psychotherapist's records, they could have asked. The prosecution's duty to disclose does not extend to gathering evidence that might be potentially useful to the defense. See *Commonwealth* v. *Neal*, 392 Mass. 1, 8 (1984); *Commonwealth* v. *Mathews*, 10 Mass. App. Ct. 888, 889 (1980). The case for the utility of the Daniel files is, in any event, unconvincing. The parties had agreed that Daniel had molested his daughter, something he actively denied, thereby leaving his credibility impaired. His statement (later culled from therapy notes) that "C was . . . brainwashed by [Harriet's] paranoia around their abuse" was not likely to have produced much impact. This was not a case of "myopic insistence upon expeditiousness." *Ungar* v. *Sarafite*, 376 U.S. 575, 589 (1964). *Commonwealth* v. *Avery*, 14 Mass. App. Ct. 137, 140 (1982). No abuse of discretion attended the denial of a continuance.

(b) *Denial of motions for required finding of not guilty.* In support of entitlement to those motions, the defendants point to inconsistencies in the government's evidence, the fanciful character of some of the children's claims (which, indeed, the trial judge disbelieved; see note 7, *supra*), the evidence of an open and loving home, parental pressure, and family hysteria. There is, in almost any case, contrary evidence. The question is whether the evidence is sufficient to

permit the finder of fact rationally to conclude that the offense charged had been proved beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). The evidence met that baseline criterion.

(c) *Sentencing.* The Souzas claim that the imposition of nine to fifteen year sentences was "so disproportionate to the pretrial offer of nonincarceration that it gives rise to a presumption that they were punished for proceeding to trial." That assertion, to put it charitably, misreads the record. The prosecutor had not agreed to a suspended sentence. In terms of the range permitted under the statute, G. L. c. 265, § 23, which authorizes a sentence of life imprisonment and the recommendations of the prosecutor (twelve to twenty years), the imposition of a nine to twelve year sentence on the rape counts is not indicative of a vengeful sentence.

*Judgments affirmed.*