## Commonwealth *vs.* William A. Gagnon.

No. 97-P-556.

Essex. June 9, 1998. - October 8, 1998.

Present: Warner, C.J., Armstrong, & Porada, JJ.

*Rape-Shield Statute. Evidence,* Sexual conduct, Relevancy and materiality, Bias. *Practice, Criminal,* Trial of indictments together.

At the trial of indictments alleging rape and abuse of two children under the age of sixteen, the judge did not err in excluding evidence of a victim's alleged sexual encounter with another, where it was not relevant to show the victim's motive to lie, of which there was ample other evidence, and where there was no claim at trial that the victim had accused the defendant because she thought she was pregnant. [588-589]

The judge at the trial of indictments alleging rape and abuse of two children (sisters) under the age of sixteen properly allowed the Commonwealth's motion for joinder of the indictments for trial, where the evidence demonstrated a continuing course of conduct by the defendant, where the defense theories as to each victim were the same, and where evidence concerning one victim would have been admissible in a separate trial concerning the other victim. [589-591]

Indictments found and returned in the Superior Court Department, one on September 15, 1993, and two on April 6, 1994, respectively.

The cases were tried before *Charles M. Grabau,* J.

*Allison Young Beauparlant* for the defendant.

*Deirdre L. Casey,* Assistant District Attorney, for the Commonwealth.

Warner, C.J. A Superior Court jury convicted the defendant of three counts of rape and abuse of a child under the age of sixteen. The defendant contends on appeal that the trial judge erred by refusing to admit evidence concerning a specific incident of alleged sexual conduct concerning one of the two victims, and by allowing the Commonwealth's motion for joinder of the offenses charged.

We summarize the evidence presented by the prosecution. The complainants, Melissa and Janice, who are half sisters,[1] were placed in foster care with Beverly and Paul Gagnon, the defendant's parents, in 1986. Melissa was five and one-half years old and Janice eight years old at the time. Also living in the home were the defendant,[2] his brother, and two of Beverly and Paul Gagnon's young grandchildren.

Mrs. Gagnon frequently left the defendant to babysit for the children when she was out of the house. Melissa testified that when she was seven years old he began forcing her to have oral sex with him at these times. He threatened to get her into trouble if she told anyone.

Janice testified that when she was nine or ten years old the defendant began to abuse her sexually while he was babysitting. On these occasions he would digitally penetrate her vagina and have her perform oral sex on him. They began to have genital sexual intercourse when Janice was between twelve and thirteen years old. Their final sexual encounter occurred on July 3, 1992, when the defendant ejaculated inside her for the first time. Janice was fourteen years old. The defendant threatened that, if she ever told, "[h]e would make it be my fault."

Melissa and Janice both testified about an incident that occurred when Melissa was between seven and nine years old. The sisters were picking up laundry in the bathroom when the defendant came in, locked the door, and asked Janice to perform oral sex on him. Janice refused, so the defendant ordered Melissa to "do it" and "show her." Melissa complied.

Janice left the Gagnon home on September 24, 1992.[3] She testified that she had been babysitting there for Melissa and Mrs. Gagnon's grandchildren the previous evening and had invited two friends into the house, although she was not permitted to do so. Two of Mrs. Gagnon's relatives saw Janice's friends leave the house and told Mrs. Gagnon. Mrs. Gagnon consequently forced Janice to leave, and Janice was placed in another foster home. Melissa ran away to her aunt's home on March 8, 1993, because, she testified, Mrs. Gagnon often hit her.

---

[1] The victims' names are fictitious.

[2] The defendant lived in the Gagnon household for part of the approximately six years that Janice and Melissa lived there. During periods when he lived elsewhere, he would visit.

[3] Beverly Gagnon testified to the specific date during the defendant's case. Other witnesses were unable to remember the exact date.

Melissa's aunt reported the sexual abuse to the police when Melissa told her about it several weeks after she left the Gagnon home. The police interviewed Melissa in April, 1993. Melissa testified that she disclosed the abuse because her brother and sisters were going to live with the Gagnons, and she was afraid that something would happen to them there. She wanted them to live with her at her aunt's.

Janice testified that in October, 1992, shortly after she left the Gagnons' house, she told her grandmother about the sexual abuse because she had missed several menstrual periods and thought she was pregnant.[4] Her grandmother told Janice's new foster mother, who contacted the Department of Social Services. Janice disclosed the sexual abuse to her social worker that fall, but the social worker did not believe her, so Janice decided not to go to the police at that time. She spoke to the police in April, 1993, after learning that Melissa had done so.

Both girls testified that they had contact with social workers and had "big sisters" while they lived in the Gagnon home, but that they did not disclose the sexual abuse during this time because they feared that Mrs. Gagnon would find out about it. The sisters argued with her frequently, she would hit them, and she sometimes had fist fights with Janice. Both girls testified that they were afraid of Mrs. Gagnon.

The defense presented evidence to support its theory that the girls had fabricated the accusations against Mrs. Gagnon's son primarily to attack Mrs. Gagnon, toward whom they were hostile because of her strict discipline and because she had forced Janice to leave. As evidence that the girls were lying, the defendant presented witnesses who testified that Melissa had become very upset when she learned that Janice had disclosed the abuse, and that she had accused Janice of lying. The girls' social worker testified that in April, 1992, Janice told her that she was not sexually active. After Janice's disclosures, the social worker testified, Melissa denied that the defendant had assaulted her sexually or that she could verify Janice's accusations. The defense counsel presented evidence that the girls had opportunities to disclose the abuse during private meetings with their social workers or at various after-school activities but that they

_____

[4]Janice testified that she first began to suspect that she was pregnant in September, before she left the Gagnon home. By October 4, her grandmother had taken her for a pregnancy test and she had learned that she was not pregnant.

failed to do so. She also brought out inconsistent statements the girls had made concerning the circumstances, dates, and number of occurrences of the abuse.

Evidence was presented of the girls' difficult relationship with Mrs. Gagnon, including Mrs. Gagnon's testimony that after Melissa moved out, they argued over a bicycle, and that Melissa had threatened, "You'll pay for this" or "I'll get you for this." Mrs. Gagnon testified that she and Janice argued continuously the summer before Janice left because Janice wanted to go out with boys and would not follow her rules, and that Mrs. Gagnon finally forced Janice to leave because of a serious infraction.

In closing argument, the defense counsel speculated about motives the girls may have had for fabricating the charges. These included their desire for revenge on Mrs. Gagnon, Melissa's wish to have her brother and sisters leave the Gagnon home and come to live with her at her aunt's, and Janice's attempt to deflect the blame for her presumed pregnancy away from herself.

1. *Evidence of Janice's prior sexual conduct.* The defendant filed a written motion in limine before trial, pursuant to G. L. c. 233, § 21B, the rape-shield statute,[5] seeking to admit evidence that Janice was expelled from the Gagnon household because, while babysitting for the younger children the previous evening, she locked them in the bathroom so that she could have sex with her boyfriend. The defendant proffered the testimony of Nancy Augusta, a neighbor and also the grandmother of two of the defendant's children, who would testify that she had agreed with Mrs. Gagnon to check on Janice while Janice was babysitting for Melissa and two of Mrs. Gagnon's grandchildren. When Augusta entered the apartment, she found the two younger children in the bathroom, the door tied closed, and Janice in Mrs. Gagnon's bed, naked, with a boy.

---

[5]The statute, as inserted by St. 1997, c. 110, provides in relevant part: "Evidence of specific instances of a victim's sexual conduct . . . shall not be admissible except evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim; provided, however, that such evidence shall be admissible only after an in camera hearing on a written motion for admission of same and an offer of proof. If, after said hearing, the court finds that the weight and relevancy of said evidence is sufficient to outweigh its prejudicial effect to the victim, the evidence shall be admitted; otherwise not."

The defendant argued in his written motion that this evidence illustrated Janice's bias against Mrs. Gagnon because the incident resulted in Mrs. Gagnon forcing Janice to leave, and it showed that she and Janice disagreed about Janice's inviting boys into the house. The judge ruled that the defendant could cross-examine Janice concerning the incident, but could not ask about sexual activity with the boy.[6] He stated that there was no basis for such questioning and that it was not relevant to the defense that Janice made her complaint because she had been thrown out of the Gagnon household.

On appeal, the defendant contends that Janice had a motive for fabrication in addition to her hostility toward Mrs. Gagnon. He argues that, believing she was pregnant, Janice "did not want to admit a voluntary sexual relationship to her grandmother and made up the story about [the defendant] to shield herself or the other boy from responsibility."[7] The short answer to this argument is that it was not made to the judge at trial. In fact, the defense counsel explicitly denied to the judge that she was relying on the theory that Janice had accused the defendant of rape because Janice believed she was pregnant by someone else.[8]

It is not surprising that the defendant decided against relying on this theory as his trial strategy. The date of the alleged sexual incident — September 23 — renders such a theory farfetched, Janice having received the negative results of a pregnancy test by October 4. In any event, "[a] defendant 'is not permitted to raise an issue before the trial court on a specific ground, and then to present that issue to this court on a different ground.' " *Commonwealth* v. *Tyree,* 387 Mass. 191, 213 (1982), cert. denied, 459 U.S. 1175 (1983), quoting from *Commonwealth* v. *Flynn,* 362 Mass. 455, 472 (1972).

Based on the arguments before him, the trial judge correctly exercised his discretion in excluding evidence of Janice's al-

---

[6]Nancy Augusta testified regarding the incident as well, but was not permitted to mention Janice's alleged sexual encounter.

[7]The defense counsel referred to this theory in her closing argument, see summary of evidence presented by the defense, *supra* at 586-587, but did not present it to the trial judge as a reason for admitting evidence of the alleged sexual incident.

[8]THE COURT: "[T]here is a second theory that has not been argued . . . that she alleged rape because she thought she was [pregnant] — that's not your defense."

DEFENSE COUNSEL: "Right."

leged sexual encounter on September 23. "Under the rape-shield statute, it is permissible to use sexual conduct evidence to show motive to lie or to explain a complaining witness's pregnancy." *Commonwealth* v. *Pearce*, 427 Mass. 642, 648 (1998). However, "the judge must also determine whether 'the weight and relevancy of said evidence is sufficient to outweigh its prejudicial effect to the victim.' G. L. c. 233, § 21B. This determination is within the sound discretion of the judge." *Ibid.*

The allegation that Janice was caught naked in bed with a boy was irrelevant to the defense theory that Janice falsely accused the defendant in order to hurt Mrs. Gagnon. The judge did admit relevant evidence concerning that incident. This included Janice's testimony that she allowed friends into the apartment in violation of Mrs. Gagnon's rules, and that Mrs. Gagnon consequently forced her to leave. Moreover, ample additional evidence was presented concerning Janice's difficult relationship with Mrs. Gagnon, including arguments over Janice's infractions of her rules and Janice's wanting to date boys, physical altercations between Mrs. Gagnon and Janice, and Janice's contention that she was afraid of Mrs. Gagnon. As in *Commonwealth* v. *Elder*, 389 Mass. 743, 751 (1983), "there is no lack of evidence on the issue of bias. Where evidence of bias is available by other means, no evidence of the complainant's prior sexual history should be admitted." See *Commonwealth* v. *Domaingue*, 397 Mass. 693, 700 (1986),[9] and cases cited. Compare *Commonwealth* v. *Joyce*, 382 Mass. 222, 224-232 (1981) (evidence of the complainant's fear of a third prosecution for prostitution, which constituted a motive to lie, was improperly excluded); *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 873-879 (1991) (evidence of the complainant's fear of her parent's reaction to her sexual activity, which constituted a motive to lie, was improperly excluded). There was no error.

2. *Joinder.* Over the defendant's objection, the judge allowed the Commonwealth's motion for joinder of seven indictments for rape of a child. Four indictments, for the period between March, 1990, and July, 1992, concerned Janice, who was

---

[9]The *Domaingue* case involved incest, which is not covered by the rape shield statute. It was therefore decided under common law principles. *Commonwealth* v. *Domaingue*, 397 Mass. at 696-698. With regard to "the admission of evidence of specific instances of sexual conduct of the victim, [the rape-shield statute] is essentially a reflection of the preexisting common law rule." *Id.* at 698.

between twelve and fourteen years old at the time. Three indictments, for the period between December, 1992, and February, 1993, concerned Melissa, who was twelve years old at the time.[10] The defendant argues that the joinder constituted an abuse of discretion because the indictments were insufficiently related and evidence concerning each sister had an unfair spillover effect on the evidence concerning the other.

"Joinder is a matter 'committed to the sound discretion of the trial judge.' " *Commonwealth* v. *Wilson*, 427 Mass. 336, 345 (1998), quoting from *Commonwealth* v. *Delaney*, 425 Mass. 587, 593 (1997), cert. denied, 522 U.S. 1058 (1998). "Rule 9 of the Massachusetts Rules of Criminal Procedure, 378 Mass. 859 (1979), allows relatively free joinder if the offenses are related in the sense that they are based on the same criminal conduct, represent a series of episodes connected together, are of similar character, or represent a common pattern. See also Smith, Criminal Practice and Procedure §§ 1054-1056 (2d ed. 1983)." *Commonwealth* v. *Souza*, 39 Mass. App. Ct. 103, 111 (1995). "Factors such as time and location play an important role in determining whether offenses are related. . . . However, our cases have allowed considerable differences with respect to these factors and other factual circumstances." *Commonwealth* v. *Wilson*, 427 Mass. at 345. In order to demonstrate that he was unfairly prejudiced by joinder, "a defendant must show that any prejudice resulting from a joint trial is so compelling that it prevented him from obtaining a fair trial." *Id.* at 346.

Janice and Melissa testified to a continuing course of conduct by the defendant which began when Melissa was seven and Janice was nine. The offenses were related in terms of the nature of the abuse, the location of the abuse, and the defendant's exploitation of his position as a foster brother and sometime caretaker to perpetrate the abuse. The girls were close in age when the abuse occurred, and the indictments, although not overlapping, were close in time. Moreover, Janice and Melissa testified to one episode — the defendant's seeking oral sex from Janice, being refused, then compelling it from Melissa — that, while not included in the indictment, was witnessed by both girls. Both girls were warned by the defendant not to

---

[10]During empanelment the Commonwealth entered a nolle prosequi to one of the indictments pertaining to Melissa. At the completion of the Commonwealth's case, the trial judge directed verdicts of not guilty to three additional indictments, one pertaining to Melissa and two pertaining to Janice.

disclose the abuse, and each was threatened that she would be blamed if she did so. See *Commonwealth* v. *Pope*, 392 Mass. 493, 502-503 (1984) (four indictments concerning sexual offenses against four different women at the same hotel were properly joined); *Commonwealth* v. *Mamay*, 407 Mass. 412, 416-417 (1990) (indictments concerning a physician's sexual abuse of six patients in his office over an eight-month period were properly joined); *Commonwealth* v. *Souza*, 39 Mass. App. Ct. at 110-112 (indictments against grandparents for sexual abuse of two grandchildren were properly joined).

The defendant contends that there were separate theories of defense regarding each girl. This is not supported by the record. The overarching defense theory was that both girls fabricated the charges because of their anger at Mrs. Gagnon. The defendant did not, as he now states, rely on Janice's belief that she was pregnant as a motive for fabrication. See part 1, *supra*.

An important means of evaluating whether the defendant was unfairly prejudiced by spillover evidence is to ask whether the evidence concerning one victim would have been allowed in a separate trial concerning the other victim. See *Commonwealth* v. *Wilson*, 427 Mass. at 347; *Commonwealth* v. *Souza*, 39 Mass. App. Ct. at 111-112, and cases cited. As in *Commonwealth* v. *Souza*, this case falls squarely under *Commonwealth* v. *King*, 387 Mass. 464, 472 (1982), and its progeny, permitting evidence of noncharged criminal behavior to show "a common pattern or course of conduct." Under this rule, evidence of the defendant's abuse of Janice would be admissible in a separate trial concerning Melissa, and vice versa, and therefore joinder was permitted. See *Commonwealth* v. *Cogswell*, 31 Mass. App. Ct. 691, 696 (1991).

The defendant has not demonstrated that the offenses were unrelated or that he was unfairly prejudiced. The trial judge properly exercised his discretion with respect to joinder.

*Judgments affirmed.*