NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-867                                          Appeals Court

COMMONWEALTH  vs.  CARLOS SILVA.

No. 16-P-867.

Worcester.     March 2, 2018. - July 20, 2018.

Present:  Wolohojian, Massing, & Englander, JJ.


Indecent Assault and Battery.  Practice, Criminal, Mistrial,
    Trial of indictments together.



Indictments found and returned in the Superior Court
Department on April 19, 2013, and June 6, 2014.

The cases were tried before Richard T. Tucker, J.


Michael L. Tumposky (Andrew Courossi also present) for the
defendant.
Nathaniel R. Beaudoin, Assistant District Attorney, for the
Commonwealth.


ENGLANDER, J.  The defendant was convicted by a Superior

Court jury of separate incidents of indecent assault and battery

on three of his step-granddaughters.  During trial, a fourth

alleged victim, one of the defendant's daughters, took the stand

and gave some testimony that was inculpatory to the defendant,

but ultimately balked and was relieved from testifying further on self-incrimination grounds.  The trial judge accordingly struck all of the daughter's testimony, instructed the jury to disregard it, and denied the defendant's motion for a mistrial. The defendant appeals, claiming, among other grounds, that a mistrial was required because the daughter's testimony was "ineradicable" from the minds of the jurors.  Because the judge did not abuse his discretion in denying a mistrial, and because there was no other reversible error, we affirm.

1.  Background.  We recite the material facts in the light most favorable to the Commonwealth.  The defendant was charged, inter alia, with multiple counts of indecent assault and battery on a child under the age of fourteen, in violation of G. L. c. 265, § 13B, as to four separate alleged victims; the defendant was also charged with one count of rape of one of the victims.  As discussed below, while there were some factual differences in the allegations as to each victim, all accused the defendant of indecent touching beginning when they were around four years old, and continuing for many years.

a.  Trial testimony.  The charges as to all four victims were joined for trial, and the judge denied the defendant's motion to sever.  The sequence of trial witnesses then proceeded as follows.

i.  Maria.[1]  The first trial witness was Maria, a victim who was nineteen years old at the time of trial.  Maria testified to a number of occasions where the defendant, her step-grandfather, touched her in way that made her feel "uncomfortable."

The first incident Maria described occurred in the defendant's bedroom in his home in Milford when Maria was about six years old.  She stated that the defendant "lure[d]" her upstairs by whispering her name, and that the defendant then touched her vagina over her clothes.

Maria testified that the touchings continued at the defendant's home in Bellingham, from when she was seven or eight years old until she was thirteen years old.  Maria remembered one particular occurrence when the defendant led her into the basement, placed her up on a ledge, and rubbed her vagina over her favorite shorts, which were ruined because the defendant had motor oil on his hands.

Finally, Maria testified that when she was a sophomore in high school, on the morning of Thanksgiving she woke up to the defendant licking the right side of her ear, inserting his fingers inside her vagina, and continuously saying, "Give me your pussy."  When Maria realized what was occurring she became angry, pushed the defendant off of her, and yelled at the defendant; the defendant then left the room.

---

[1] A pseudonym.

ii.  Karen[2] and the motion for a mistrial.  The next witness was Karen, the defendant's daughter, an alleged victim who was eighteen at the time of trial.  After answering some initial questions posed by the prosecutor, Karen remained silent in response to questions regarding the defendant's conduct, as follows:

Prosecutor:  "Has [the defendant] ever touched you in a way that made you feel uncomfortable?"

Karen:  "Well, like . . ."

Prosecutor:  "Has he ever touched you in a sexual way that's made you feel uncomfortable?"

(Pause.)

. . .

Prosecutor:  "So, let me narrow the time frame.  Prior to 2012, when you were a young child living with your father, did he ever touch you in a sexual way that made you feel uncomfortable?"

(Pause.)

Prosecutor:  "Would you like a glass of water?"

(Pause.)

Prosecutor:  "Let me withdraw that question, and ask you, [Karen], how do you feel about testifying today?"

Karen:  "I don't want to. . . .  Because I just . . . don't feel comfortable doing this. . . .  I don't feel comfortable testifying against my own father."

. . .

---

[2] A pseudonym.

Prosecutor: "Well, let me just ask you that question again, then: did [the defendant] ever touch you in a sexual way that made you feel uncomfortable?"

(Pause.)

Defense counsel: "Your Honor, may we approach . . . , please?"

The court: "Yes."

There were four separate pauses in this testimony, and the judge stated that each of them lasted one to one and one-half minutes. When the prosecutor resumed questioning, Karen stated that she did not remember if her father had "touched [her] in a sexual way." The prosecutor then sought to refresh Karen's memory by showing her grand jury testimony to her, after which Karen stated that her memory was refreshed but also that she could not remember if her father had sexually abused her as a child:

Prosecutor: "After reading that, is your memory refreshed as to withhold on [sic] [the defendant] sexually assaulted you as a child?"

Karen: "Yes."

Prosecutor: "So, has your father, [the defendant], ever sexually abused you as a child?"

Karen: "I said 'yes', so -- I don't remember --"

Prosecutor: "I didn't hear you; I'm sorry, [Karen]."

Karen: "I said 'I said "yes," but I don't remember.'"

Prosecutor: "Okay; but then I asked you if your memory was refreshed, and you said yes."

Karen:  "I said yes, but I just . . . .  I can't remember, but I said yes."

Karen's testimony was then suspended.  Counsel was appointed, who informed the court the following day that Karen would be invoking her privilege under the Fifth Amendment to the United States Constitution.  The judge conducted a hearing pursuant to Commonwealth v. Martin, 423 Mass. 496, 504-505 (1996), after which he determined that Karen had properly invoked her Fifth Amendment right and would not be compelled to testify.  The result of these actions was that Karen was excused, her testimony was terminated midstream, and she was never cross-examined.

The defendant moved for a mistrial.  Defendant's counsel argued that the pauses in Karen's testimony were "the most prejudicial and pregnant pauses [she had] ever seen in the history of . . . trying cases."  She argued that this prejudice was heightened because in the Commonwealth's opening statement the prosecutor had previewed Karen's anticipated testimony.[3] Defense counsel also pointed out that she had been unable to cross-examine Karen, and that she had useful cross-examination material because Karen had previously recanted to a defense investigator.  The judge denied the motion for a mistrial.  He

---

[3] In opening, the prosecutor identified Karen as a victim, and described her expected testimony of sexual abuse at the hands of her father.

agreed that the circumstances were "unfortunate," but believed that they could not "have been dealt with any other way than bringing [Karen] up to the stand."

The judge instead addressed the situation with a curative instruction, as follows:

> "Yesterday, you saw that [Karen] was on the stand, and she is no longer going to testify.  You are to make no inference against [the defendant] as [sic] the reason for [Karen's] absence.  You are to disregard [Karen's] testimony in its entirety, and disregard any reference to [Karen's] allegations entirely.  You may not consider any reference to [Karen's] prior testimony or her demeanor while on the witness stand.  You shall strike it from your memories as if she never testified and will never testify in this trial, and you shall not speculate as to the reason for that.  The reason was a legal ruling on my part, so you shall not speculate any further on that, and you shall not consider it at all in your deliberations."  (Emphasis supplied.)[4]

  iii.  Naomi and Laura.[5]  Following Karen's appearance, both Naomi and Laura testified.  Each of them was a step-grandchild of the defendant, as was Maria, the first witness.

Naomi was eighteen years old at the time she testified.  She testified that the defendant began touching her in a way that made her feel uncomfortable when she was four years old, at the defendant's house in Milford.  She testified to multiple instances where the defendant touched her buttocks and vagina

---

[4] Later, at the close of the Commonwealth's case-in-chief, the judge granted an assented-to motion for required findings of not guilty as to the charges related to Karen.

[5] Both names are pseudonyms.

with his hands over her clothes. She also testified to a specific occasion when she was nine years old, in the basement of the defendant's home in Bellingham, where he zipped down her jacket, stared at her breasts, and touched her vagina under her clothes with his hand.

Laura was fifteen years old at the time of her testimony. Laura testified that the defendant touched her multiple times in a way that made her feel uncomfortable, from when she was four years old until she was eight years old. She also testified to two specific incidents that occurred at the home in Bellingham. One of those occurred in the defendant's bedroom. Laura testified that she found the defendant lying on his back in bed in just his underwear. The defendant asked her to give him a hug, and when she did the defendant put his hands on her buttocks and "made [her] move up and down on him."

b. Verdicts. The jury found the defendant guilty, inter alia, of multiple counts of indecent assault and battery on a child, with respect to each of Maria, Naomi, and Laura. The jury also found the defendant guilty of rape with regards to Maria. The defendant appeals.

2. Discussion. a. Motion for a mistrial/Karen's testimony. The defendant first argues that Karen's testimony and the events surrounding it were so prejudicial that a mistrial was required. Picking up on language from one of our

cases, the defendant argues that despite the judge's instruction to disregard Karen's testimony in its entirety, here the prejudice was "ineradicable."  See Commonwealth v. Thad T., 59 Mass. App. Ct. 497, 508 (2003) ("Only a compelling showing of ineradicable prejudice would cause us to conclude that the judge's instructions to disregard [the witness's] testimony were inadequate").

We review the denial of a motion for a mistrial for abuse of discretion.  See Commonwealth v. Santana, 477 Mass. 610, 625 (2017), citing Commonwealth v. Gallagher, 408 Mass. 510, 517 (1990).  The test is not whether we would have made a different decision, but whether the judge "made 'a clear error of judgment in weighing' the [relevant] factors" such that his decision "falls outside the range of reasonable alternatives." Commonwealth v. Bryan, 476 Mass. 351, 357 (2017), quoting from L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  Further, "[w]hen a jury have been exposed to inadmissible evidence, the judge may rely on a curative instruction to correct any error and to remedy any prejudice."  Commonwealth v. Durand, 475 Mass. 657, 668 (2016) (quotation omitted).

We discern no abuse of discretion in the denial of the motion for a mistrial.  Without doubt, Karen's testimony, and the events surrounding it, needed to be addressed by the judge. The lengthy pauses by Karen, the prosecution's effort to refresh

her recollection with grand jury testimony, and the fact that Karen left the stand without being cross-examined certainly held the potential for unfair prejudice. The jury could well have inferred from Karen's abbreviated testimony that she had previously testified that her father had abused her, but that she no longer was willing to testify against him. This possibility of prejudice was exacerbated because the jury had heard, in the prosecutor's opening, about some of Karen's expected testimony.

Here, however, the trial judge acted forcefully to avert this potential prejudice. The judge struck Karen's testimony in its entirety, and instructed the jury to "strike it from your memories as if she never testified." The instruction was clear and direct. In law, Karen's testimony did not exist for purposes of the defendant's trial. "As long as the judge's instructions are prompt and the jury do not again hear the inadmissible evidence . . . a mistrial is unnecessary." Durand, supra, quoting from Commonwealth v. Garrey, 436 Mass. 422, 435 (2002).

The defendant argues, however, that the jury could not put the testimony out of their minds despite the judge's instruction. But the fundamental difficulty with the defendant's contention is that it requires this court to conclude that the jury did not follow the judge's very specific

instruction to disregard all of Karen's testimony.  Such a conclusion would be at odds with both our case law and our basic assumptions about how jurors perform their function.  Jurors are presumed to follow the law as instructed.  See Commonwealth v. Williams, 450 Mass. 645, 651 (2008) ("Jurors are presumed to follow a judge's instructions, including instructions to disregard certain testimony").  Indeed, our jury system is in many ways built on this assumption -- on the structure that the judge provides the law, and that the jurors then follow that law.  See Commonwealth v. Leno, 374 Mass. 716, 719 (1978).  "[We] shall not assume that jurors will slight strong and precise instructions of the trial judge to disregard the matters which have been withdrawn from their consideration."  Thad T., 59 Mass. App. Ct. at 508, quoting from Commonwealth v. Gordon, 356 Mass. 598, 604 (1970).

Indeed, the defendant has not pointed to a single Massachusetts case, and we have found none, where an appellate court has concluded that a mistrial was required because the jury would not be able to disregard evidence they were instructed to disregard in its entirety.  The principal case relied upon by the defendant, Commonwealth v. Funches, 379 Mass. 283, 292 (1979), provides him no help.  Funches is relevant in that it involved a situation where, as here, a witness began testifying and provided inculpatory testimony, but then was not

able to be cross-examined as to that testimony (as the witness refused to answer). Id. at 287-288. Unlike in this case, however, in Funches the witness's inculpatory testimony was not struck, and the jury were never instructed to disregard it. See id. at 287. The testimony in Funches thus was before the jury, and infected their verdict. Id. at 291-294. Funches is inapposite where, as here, the testimony was struck in its entirety during trial.

The defendant also points to the decision in Bruton v. United States, 391 U.S. 123, 135-137 (1968), where the United States Supreme Court concluded that a jury would be unable to follow a judge's instructions as to the use of evidence in a criminal trial. While the analogy has some force, we think Bruton and its line of cases are distinguishable. Bruton addressed circumstances where criminal codefendants were tried together, and where the prosecution introduced an out-of-court statement of one of the codefendants that directly inculpated the other. Id. at 124. Prior to Bruton, this evidence would often be admitted, with judges instructing the jury that the out-of-court statement was admissible only against the codefendant who made the statement, while it must be disregarded as to the other defendants. Id. at 126. Bruton held that the admission of a codefendant's out-of-court statement in a joint trial, where that statement directly implicated his codefendant,

violated the confrontation clause of the United States Constitution; part of Bruton's rationale was that the limiting instruction given to the jury was not sufficient to cure the confrontation clause issue, because the parsing required of the jury was asking too much of them.  Id. at 126, 128-129.  It was in that context -- where the jury were instructed to consider the evidence against some defendants but not others -- that Judge Learned Hand wrote that he doubted the jury could engage in the "mental gymnastic" required by such an instruction.  Id. at 132 n.8, quoting from Nash v. United States, 54 F.2d 1006, 1007 (2d Cir. 1932).[6]

Here, unlike in the Bruton cases, the judge struck the testimony and the jury were instructed to disregard it in its entirety.  It was simply not evidence.  The judge was of course able to assess the jury when they heard Karen's testimony, and when he gave his corresponding instruction to disregard that

_____

[6] There are a few cases in other jurisdictions where the striking of testimony was held inadequate, and thus a mistrial was required.  Toolate v. Borg, 828 F.2d 571, 572-575 (9th Cir. 1987), is one such decision, but in Toolate it was a codefendant who initially took the stand, implicated both the defendant and himself, and then refused cross-examination.  Toolate thus is distinguishable from this case.  Id. at 572.  See also United States v. Ritz, 548 F.2d 510, 520-521 (5th Cir. 1977) (reversal required where witness who was husband of one codefendant and father of two others was compelled to invoke Fifth Amendment privilege in front of jury).

testimony.  The decision to deny the motion for a mistrial was not outside the range of reasonable outcomes on the facts here.[7]

2.  <u>Motion to sever</u>.  The defendant next argues that the judge erred by not granting the defendant's pretrial motion to sever the charges into four separate trials, one for each victim.  The charges were joined as "related" under Mass.R.Crim.P. 9(a)(3), 378 Mass. 859 (1979).  Offenses are "related" if they are "based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan."  Rule 9(a)(1).  The purpose of the rule is to promote judicial economy and efficiency, and to avoid multiple similar trials and their concomitant burdens on witnesses and the courts.  See <u>Commonwealth</u> v. <u>Hoppin</u>, 387 Mass. 25, 32 (1982); <u>Commonwealth</u> v. <u>Hernandez</u>, 473 Mass. 379, 394 (2015).  Related offenses accordingly "shall" be joined for

---

[7] The defendant argues that a mistrial was also required due to a question the prosecutor asked on cross-examination of Karen's sister (another of the defendant's daughters):  "And you know what [your mother] is charged with?", to which the sister answered, "Yes."  The question should not have been asked.  Indeed, it is difficult to understand how the prosecutor thought it was proper to bring up pending, unproven, and unspecified charges against the defendant's wife.  The testimony does not change our view, however, that a mistrial was not required.  The judge sustained an objection made immediately after the answer was given, and no further questions were asked on the subject.  The testimony itself told the jury very little, even in context.  It was within the judge's discretion not to order a mistrial based upon the testimony, either taken alone or in combination with Karen's testimony.

trial unless the judge "determines that joinder is not in the best interests of justice." Rule 9(a)(3).

Our review of a judge's decision on a motion to sever is for a "clear abuse of discretion." Commonwealth v. Pillai, 445 Mass. 175, 180 (2005) (citation omitted). "[T]o prevail on a claim of misjoinder, the defendant 'bears the burden of demonstrating that the offenses were unrelated, and that prejudice from the joinder was so compelling that it prevented him from obtaining a fair trial.'" Id., quoting from Commonwealth v. Gaynor, 443 Mass. 245, 260 (2005).

There was no clear abuse of discretion here. In considering the question, we are guided by several prior decisions of this court and the Supreme Judicial Court that have allowed the joinder of charges involving multiple victims of sexual offenses, against a single defendant. See, e.g., Gaynor, supra at 259-263; Pillai, supra at 179-184; Commonwealth v. Souza, 39 Mass. App. Ct. 103, 110-112 (1995); Commonwealth v. Torres, 86 Mass. App. Ct. 272, 275-276 (2014). These cases collectively identify the factors to consider in deciding whether joinder is appropriate: whether the victims were of similar age and gender, or shared other characteristics; the proximity in time of the assaults; and whether there were similarities in the details of the crimes -- for example, in

terms of location, the manner in which the defendant gained access, or the acts themselves.

The facts here fall comfortably within those cases that have allowed joinders to stand. Here, each of the victims was one of the defendant's stepchildren or daughters, and the abuse of each occurred within the defendant's home. Each of the victims was first assaulted at around the same age -- between four and six years old -- and for each victim the assaults were repeated over years. And there were similarities, as well, in the defendant's behavior both leading up to and during the incidents; for example, the defendant often would find means to isolate the child victims in a room in his home (such as the basement) before beginning the assault. Similar facts are echoed in the cases that have previously upheld joinders of charges involving multiple victims of sexual assault. See Souza, 39 Mass. App. Ct. at 111-112; Torres, 86 Mass. App. Ct. at 276.

In determining the propriety of joinder, one important consideration is whether, if the cases were severed into trials of individual victims, the testimony of the other victims of assault nevertheless would have been admitted in each trial regarding an individual victim. See Souza, 39 Mass. App. Ct. at 111. The question is material, because if the assaults on the other victims would not have been admitted in the trials of an

individual victim, the Commonwealth should not benefit from joinder by thereby gaining the admission of otherwise inadmissible evidence.

We believe the testimony of each of the victims likely would have been admissible at any individual trial.  Evidence of prior bad acts may not be used to show bad character or the general propensity to commit crime, but it may be admissible to prove opportunity, intent, preparation, plan, knowledge, pattern of operation, or common scheme or course of conduct, as long as the probative value of the evidence is not outweighed by the risk of unfair prejudice.  See Commonwealth v. Mazariego, 474 Mass. 42, 56 (2016); Mass. G. Evid. § 404(b) (2018).  Here, there was sufficient identity of location, time periods, relationships to the defendant, and similarities in the acts charged such that the other assault evidence likely would have been admissible to show a common pattern or course of conduct. See Commonwealth v. King, 387 Mass. 464, 471-472 (1982) (evidence of prior acts of sexual abuse, forming "temporal and schematic nexus," properly admitted [citation omitted]).

In short, the judge did not abuse his discretion in refusing to sever these cases for trial, and we discern no reversible error in the conduct of the trial, either.[8]

---

[8] The defendant also contends that the prosecutor, in closing, improperly cited to certain testimony from the

Judgments affirmed.

---

defendant's son as evidence of the defendant's bad character. There was no objection to the prosecutor's statement at trial, however, and we find no substantial risk of a miscarriage of justice in this case.  See Commonwealth v. Brown, 479 Mass. 600, 609-610 (2018).

To the extent we have not explicitly discussed them, we have carefully considered the defendant's remaining arguments, and we find them to be without merit.