Commonwealth *v.* Nicoll.

## Commonwealth *vs.* Neil S. Nicoll.

Hampshire. October 6, 2008. - December 23, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.[1]

*Constitutional Law,* Double jeopardy, Jury, Waiver of constitutional rights. *Practice, Criminal,* Double jeopardy, Mistrial, Jury and jurors. *Jury and Jurors. Rules of Criminal Procedure.*

At the retrial of a criminal complaint following a mistrial resulting from the dismissal of a juror from a six-person jury, the judge did not err in granting the defendant's motion to dismiss the complaint on the ground that a second trial would violate the defendant's right to be free from double jeopardy, where the Commonwealth failed to satisfy its heavy burden of proving that there was a manifest necessity for the judge to declare a mistrial at the first trial, given that the judge, in quickly granting the mistrial, failed to give careful consideration to other alternatives — namely, that the defendant could have constitutionally waived his right to a verdict rendered by no fewer than six jurors. [818-822]

Complaint received and sworn to in the Eastern Hampshire Division of the District Court Department on November 16, 2004.

The case was tried before *Richard J. Carey,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Judith Ellen Pietras,* Assistant District Attorney, for the Commonwealth.

*Charles K. Stephenson (Barbara J. Sweeney* with him) for the defendant.

Cordy, J. On May 17, 2006, a District Court judge empanelled a jury of six to try Neil S. Nicoll on a complaint for operating a vehicle under the influence of alcohol. No additional jurors were empanelled.[2] After the trial began, one juror realized that he

---

[1]Justice Greaney participated in the deliberation on this case prior to his retirement.

[2]General Laws c. 234A, § 68, provides in relevant part: "In every six-person jury case, the court shall impanel at least one additional juror." It also provides that "[u]pon a finding of cause, the trial judge may impanel a lesser

recognized the first witness, a police officer, and informed the trial judge that he might not be able to be impartial. After examining the juror under oath in the presence of both parties, the judge excused the juror from further service on the jury over the defendant's objection. Left with five jurors, the judge and attorneys briefly discussed how to proceed. Defense counsel expressed his frustration over the empanelment of only six jurors and then stated, "I don't think we can go forward with five jurors, can we?" The judge responded, "Not in a criminal case. Could in a civil case with the consent of all parties but I don't believe we can do so in a criminal case. Okay, I'm going to declare a mistrial." Defense counsel ended the exchange, saying, "Anyway, for the record, my objection. I think he would be a fine juror."

The case was then scheduled for retrial, and Nicoll moved to dismiss the complaint on the ground that a second trial would violate his right to be free from double jeopardy. The same judge who had declared the mistrial allowed Nicoll's motion. As the basis for his ruling, the judge found that contrary to his initial understanding, Massachusetts procedural rules would have allowed the trial to continue with five jurors (albeit with Nicoll's consent), citing Mass. R. Crim. P. 19 (b), 378 Mass. 888 (1979),[3] and that although he had given counsel "a full opportunity to be heard," he had failed to "give careful consideration to the alternative of proceeding with the trial before less than a full jury." Consequently, the judge concluded that there had been no "manifest necessity" for the mistrial and double jeopardy barred a second trial. The Commonwealth appealed, and we transferred the case here on our own motion.

number of jurors than specified under this section." The record is silent on whether the judge found "cause" for empanelling fewer than seven jurors in this case. General Laws c. 234, § 26B, which concerns the seating of alternate jurors only after certification that a trial would be "protracted," is inapplicable to the extent that it conflicts with G. L. c. 234A, § 68. See G. L. c. 234A, § 1 (in participating counties, provisions of law inconsistent with G. L. c. 234A will cease to be effective).

[3]Rule 19 (b) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 888 (1979), provides: "If after jeopardy attaches there is at any time during the progress of a trial less than a full jury remaining, a defendant may waive his right to be tried by a full jury and request trial by the remaining jurors by signing a written waiver which shall be filed with the court. If there is more than one defendant, all must sign and file a waiver unless the court in its discretion severs the cases."

To resolve this case, we must decide whether a defendant may constitutionally waive his right to a verdict rendered by no fewer than six jurors and, if so, whether the judge's failure to consider that possibility proscribes a retrial of Nicoll. We answer both questions in the affirmative, and affirm the dismissal of the case against Nicoll.

The protection against double jeopardy has a long history rooted in both the United States Constitution and Massachusetts common law. *Benton* v. *Maryland*, 395 U.S. 784, 787 (1969). *Lydon* v. *Commonwealth*, 381 Mass. 356, 366, cert. denied, 449 U.S. 1065 (1980). The rule protects defendants from double trials, not merely from double punishments. *Commonwealth* v. *Steward*, 396 Mass. 76, 78 (1985), citing *Breed* v. *Jones*, 421 U.S. 519, 528 (1975). Consequently, once jeopardy has attached, a judge may declare a mistrial over a defendant's objection and commence a new trial only in light of a "manifest necessity." *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824).

Due to the importance of the double jeopardy protection, the Commonwealth bears the "heavy" burden of proving that a mistrial rested on manifest necessity. *Arizona* v. *Washington*, 434 U.S. 497, 505 (1978). There is no "crisp formula for determining when 'manifest necessity' arises"; however, "[t]wo principles emerge for guidance: (1) counsel must be given full opportunity to be heard and (2) the trial judge must give careful consideration to alternatives to a mistrial." *Commonwealth* v. *Steward, supra* at 79.

Nicoll concedes that the trial judge in this case satisfied the first requirement by asking the attorneys for their opinions and openly listening to their views and advice. We therefore proceed to the second requirement that consists of two parts: whether there was an alternative and, if so, whether the judge gave it careful consideration.

The Commonwealth argues that juries must be comprised of at least six jurors in all circumstances; for that reason, it contends there was a "manifest necessity" for the mistrial when the number of jurors available to render a verdict was reduced to five. Nicoll, on the other hand, argues that he could have waived the six-person jury requirement if the judge had considered that option.

The United States Supreme Court's consideration of the inter-play between jury size and the Constitution has spanned several decades. In 1970, the Supreme Court first held that a jury of six persons (rather than twelve) satisfied a defendant's right to a jury trial pursuant to the Sixth Amendment to the United States Constitution in nonpetty criminal offenses. *Williams* v. *Florida*, 399 U.S. 78, 103 (1970). The Court expressly reserved ruling on whether a number smaller than six would pass constitutional scrutiny. *Id.* at 91 n.28. A few years later, the Court was confronted with a challenge to a Georgia statute that required misdemeanor criminal cases be tried before a jury of five persons. *Ballew* v. *Georgia*, 435 U.S. 223, 226 (1978) (*Ballew*). After examining several statistical studies, demonstrating that smaller juries deliberate less effectively; convict a greater number of innocent people; reach fewer "hung juries" "to the detriment of one side, the defense"; and contain fewer minority jurors, *id.* at 232-237, the Court held that Georgia's practice violated the defendant's right to a jury trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *Id.* at 245. It reasoned that "the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members." *Id.* at 239. However, it also noted that it could not "pretend to discern a clear line between six members and five." *Id.*

The findings of the studies cited in *Ballew* pointed to a single conclusion: that States placed a thumb on the scale in favor of the government when they required defendants to submit to juries of five persons. The Supreme Court reiterated that point when it struck down a statute providing for conviction on the vote of five persons on a six-person jury in *Burch* v. *Louisiana*, 441 U.S. 130, 139 (1979) (*Burch*). The Court focused primarily on the jury's purpose of "prevent[ing] government oppression by providing a 'safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge.' " *Id.* at 135, quoting *Duncan* v. *Louisiana*, 391 U.S. 145, 156 (1968). The Court wrote that the *Ballew* statute "deprive[d] an accused of his right to trial by jury," *Burch, supra* at 136, and that the statute in *Burch* posed "a similar threat." *Id.* at 138.

The conclusion that jury size requirements exist primarily to

protect the rights of defendants was reached by the Supreme Court decades earlier in *Patton* v. *United States*, 281 U.S. 276, 297 (1930). In that case, the Supreme Court held that a defendant could waive a twelve-person jury (then constitutionally required) and proceed to verdict if a juror became ill midtrial. *Id.* In its decision, the Court cited approvingly the words of William Blackstone and Judge Joseph Story, both of whom deemed trials by jury a "privilege" preserved primarily to erect "barriers on every side against the approaches of arbitrary power." *Id.* Based on those views and English history, the Court concluded that the Sixth Amendment right to a trial by a jury of twelve persons "was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so, is to convert a privilege into an imperative requirement." *Id.* at 298.

The Commonwealth, however, argues that a five-person jury trial is an unwaivable "nullity." While it does not cite a specific source for its proposition, the Commonwealth appears to rely on *Ballew* and *Burch*,[4] both of which addressed jury rights guaranteed by the Sixth and the Fourteenth Amendments in the context of State laws either requiring a jury of fewer than six persons or permitting a verdict by fewer than six persons without the defendant's consent. See *Burch*, *supra* at 131; *Ballew*, *supra* at 224.

The Sixth Amendment provides a person charged with a criminal offense a series of important rights related to the prosecution of that offense. Specifically, it provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ; to be confronted with the witnesses against him; . . . and to have the Assistance of Counsel for his defence." As important as these rights may be, the accused is entitled to waive each of them. See, e.g., *Commonwealth* v. *Beliard*, 443 Mass. 79, 89 (2004) (defendant may waive right to confront witnesses); *Commonwealth* v. *Martin*, 425 Mass. 718, 720-721 (1997) (defendant may waive right to assistance of counsel); *Commonwealth* v. *Spaulding*, 411 Mass. 503,

---

[4]The Commonwealth also cites language from *Brown* v. *Louisiana*, 447 U.S. 323 (1980), which gave retroactive effect to the decision in *Burch* v. *Louisiana*, 441 U.S. 130 (1979).

504 (1992) (defendant may waive right to speedy trial); *Commonwealth* v. *Williams*, 379 Mass. 874, 876 (1980) (defendant may waive right to public trial); *Commonwealth* v. *Rowe*, 257 Mass. 172, 174 (1926) (defendant may waive right to be tried by jury). We are not persuaded that the right to a jury trial by a jury of at least six persons stands on a different footing. To accept the Commonwealth's argument otherwise would "imprison a man in his privileges and call it the Constitution." *Adams* v. *United States ex rel. McCann*, 317 U.S. 269, 280 (1942).

Having resolved the constitutional question, we turn to rule 19 (b), which provides that after jeopardy attaches and there is then "less than a full jury remaining, a defendant may waive his right to be tried by a full jury and request trial by the remaining jurors by signing a written waiver." The Commonwealth contends that Nicoll's reliance on this rule is of no avail. It first argues that rule 19 (b) was adopted for the sole purpose of allowing waiver of the twelve-person and not the six-person jury requirement. We disagree. Rule 19 (b) became effective on July 1, 1979, seven years after Massachusetts established the six-person jury in some District Courts, see G. L. c. 218, § 27A, inserted by St. 1972 c. 620, § 1; and six months after Massachusetts expanded the six-person jury to all divisions of the District Court Department, see G. L. c. 218, § 27A, as appearing in St. 1978, c. 478, § 189. Additionally, when the Legislature expanded the availability of six-person juries in 1978, it explicitly allowed defendants the right to waive those juries. G. L. c. 218, § 26A, inserted by St. 1978, c. 478, § 188. We fail to see why a defendant would be allowed to waive six jurors, but not one, see *Blair* v. *State*, 698 So. 2d 1210, 1217 (Fla. 1997) ("it would be anomalous indeed to hold that a defendant could waive an entire jury, but not waive the presence of one juror"), and decline to limit the rule's applicability to juries of twelve.

The Commonwealth next argues that even if rule 19 (b) applies, a waiver would have been valid only if executed by Nicoll in writing. Because he did not execute such a waiver, the Commonwealth contends that Nicoll "waived the opportunity to waive his right to a full jury." We disagree with this contention as well.

Here, the question is not whether Nicoll executed a valid

waiver, but whether there was a "manifest necessity" for declaring a mistrial. Such a necessity would have presented itself if Nicoll had declined to execute a waiver, but the record is clear that neither the judge nor counsel was aware of or even considered the option. Rather, the judge quickly concluded, without taking time to check the law, or offering counsel the opportunity to research the issue and report back, that there were no alternatives to a mistrial. As the judge recognized in allowing Nicoll's motion to dismiss, such a rush to judgment does not comport with the requirement that the "trial judge must give careful consideration to alternatives to a mistrial." *Commonwealth* v. *Steward*, 396 Mass. 76, 79 (1985).

In these circumstances, the Commonwealth is unable to satisfy its heavy burden of proving that there was a "manifest necessity" for declaring a mistrial. The Commonwealth is therefore barred by the principles of double jeopardy from retrying Nicoll. The judgment of dismissal is affirmed.

*So ordered.*