JUAN CRUZ *vs.* COMMONWEALTH.

Suffolk. January 3, 2012. - March 15, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Practice, Criminal,* Mistrial, Double jeopardy.

A Superior Court judge did not abuse his discretion in determining, over a
criminal defendant's objection, that there was manifest necessity for a mistrial
arising from the Commonwealth's violation of a discovery order (i.e., its
failure to copy for the defense at least 500 pages of computer-generated
information obtained during the police investigation), where proceeding with
trial was not a viable alternative, despite the defendant's proffered waiver of
any future claims of ineffective assistance of counsel arising out of his
counsel's failure to review the investigator's file, given that proceeding
without the benefit of so much potentially highly relevant material would
have offended the interest of the public in fair trials designed to end in just
judgments; and where there was no prejudice to the defendant. [669-674]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on January 21, 2011.

The case was reported by *Spina,* J.

*Raymond Buso* for the defendant.

*David F. O'Sullivan,* Assistant District Attorney, for the
Commonwealth.

SPINA, J. Juan Cruz (defendant) was indicted for trafficking in
cocaine, in violation of G. L. c. 94C, § 32E. On the second day
of trial, defense counsel discovered that the Commonwealth had
violated a discovery order by failing to copy for the defense at
least 500 pages of computer-generated information obtained
during the police investigation. The defendant moved to dismiss
the case but, for financial and emotional reasons, "strenuously"
objected to any declaration of a mistrial. Finding that the Com-
monwealth had not intentionally violated the order, the trial
judge denied the motion to dismiss. The judge further found that
the newly disclosed materials contained information that any
"reasonably diligent" defense counsel would want to review, and

that to do so would take longer than a mere "brief delay." Accordingly, the judge declared a mistrial over the defendant's objection.

Prior to the second trial, the defendant moved to dismiss, arguing that the declaration of mistrial was not justified by "manifest necessity," *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824), and therefore any further prosecution of the case was barred by the double jeopardy clause of the Fifth Amendment to the United States Constitution. That motion also was denied,[1] and the defendant initiated this petition pursuant to G. L. c. 211, § 3. See *Neverson* v. *Commonwealth*, 406 Mass. 174, 175-176 (1989) (interlocutory petition concerning denial of motion to dismiss in criminal case allowed where defendant presents double jeopardy claim of "substantial merit"). A single justice of this court reserved and reported the case without decision to the full court. We conclude that the trial judge did not abuse his discretion in determining that there was "manifest necessity" for a mistrial. The defendant's petition must be denied.

1. *Prior proceedings.* Our inquiry in cases involving the declaration of a mistrial is fact driven; we therefore begin by recounting the prior proceedings in some detail. On June 1, 2007, the defendant was indicted for trafficking in cocaine, in violation of G. L. c. 94C, § 32E. Defense counsel entered an appearance on behalf of the defendant at his arraignment, where the defendant pleaded not guilty. Shortly thereafter, defense counsel filed a request for discovery, which on October 22, 2007, was agreed to by the Commonwealth[2] and incorporated into a court order. Paragraph ten of that order required the Commonwealth to "provide a copy of any computer generated information obtained by the police during the investigation of this matter." After some three years of discovery and motion practice, the case went to trial.

On September 13, 2010, a jury was empanelled and sworn and the defendant's trial began. The Commonwealth's case against the defendant centered around an investigation and subsequent search of a residence at 6 Fairview Avenue in Swampscott, in

---

[1]This motion was decided by the same judge who had declared the mistrial.

[2]The request was agreed to "as modified." The parties do not contend that the modification is relevant here.

which cocaine and items indicative of cocaine trafficking were found. On September 14, counsel for both sides presented opening statements and began calling witnesses. It became clear that the defendant's trial strategy was to suggest that he did not own the drugs, and that the government could not prove he owned them because the residence was used by multiple individuals.[3] To that end, defense counsel in his opening statement analogized the Commonwealth's case to a game similar to what is known as "hot potato," in which the defendant, though not the owner of the potato, was closest to it when the music stopped. Also in his opening statement, defense counsel predicted that the Commonwealth would fail to produce notes, reports, or pictures created by the police to document the investigation.

Two police officers testified that they had conducted an investigation of the residence, from January to May, 2007. Over the course of the investigation, the officers searched the trash and found numerous clear plastic sandwich bags (baggies) with the bottom corners cut off. They also surveilled the residence and saw that various individuals would visit the house during the day, stay only a few minutes, and then leave. The defendant was seen emerging from the rear of the residence on a number of occasions, and on one occasion the officers followed the defendant as he traveled through Lynn, Peabody, Salem, and Saugus, where he would enter various dwellings for two or three minutes, and then depart. On May 3, 2007, the officers executed a search warrant at the residence. The defendant was in the rear unit of the residence at this time.[4] On searching the kitchen area of the rear unit, officers found what was later determined to be over fifty grams of cocaine, along with a scale, baggies, and inositol powder.

On the second day of trial, after court had recessed for the day, the prosecutor informed defense counsel that the chief investigating officer's full file in the case was available if he

[3]The prosecutor proceeded on a theory of constructive possession, under which the Commonwealth must show that the defendant had knowledge of the drugs, coupled with an ability and intention to exercise dominion and control over them. See *Commonwealth* v. *Gonzalez*, 452 Mass. 142, 146 (2008), quoting *Commonwealth* v. *Boria*, 440 Mass. 416, 418 (2003).

[4]The police initially believed the residence to be a single-family home. While executing the search warrant, they discovered that the residence contained two separate units, with no access between the two. The police left the scene, obtained a search warrant for the rear unit, and returned to perform the search.

would like to see it.[5] Defense counsel accepted the offer, and later described his review of the file as follows:

> "[T]he prosecutor . . . showed the defense counsel a Xerox box which contained two spiral notebooks and several inches of paperwork which counsel believes contains between five hundred . . . and a thousand pages of documents. Counsel spent the next [thirty] minutes leafing through the documents and based upon this review estimates that in excess of 95% of those documents are 'computer generated information obtained by the police during the investigation of this matter' which have not been turned over to the defense in the last three years."

The contents of the box were never precisely catalogued, but generally consisted of computer-generated information — motor vehicle registrations, information from the registry of deeds, criminal offender record information (CORI), and telephone records — concerning various individuals, some of whom were previously unknown to the defense.

The next day, the defendant moved to dismiss the case as a sanction for the Commonwealth's violation of the discovery order. In his motion, defense counsel took pains to argue the importance of the documents to the defendant's case. He characterized the undisclosed information as "highly relevant . . . and potentially exculpatory," in that they would help show the "use and occupancy of the search situs by others." He opined that the documents, many of which were date stamped, would allow him to create a timeline of the investigation, something he had been unable to do with the documents provided by the Commonwealth during discovery. Defense counsel also explicitly argued against a mistrial, stating that the pendency of the charges had already caused the defendant significant financial and emotional distress.

The judge heard both sides on the motion to dismiss and made extensive findings. The prosecutor argued that the police had, at various points during the pendency of the trial, made the file

---

[5]Materials from the file had been the subject of cross-examination that day. It is unclear from the record whether defense counsel had suggested to the prosecutor that he did not have the materials.

available to defense counsel. Detective Sergeant Timothy Cassidy, the lead investigator in the case, testified to similar effect. Defense counsel denied having ever seen the materials. He argued that the case should be dismissed as a sanction because of the large volume of documents not provided to him. Defense counsel estimated he would need three months, and significant help, to process the materials, stating: "I need somebody to help me on these because they're not things I've seen before. But what I do see, I already see things that are very helpful to [the defendant] that I cannot process without a significant amount of time and help to do it." Defense counsel repeated that the defendant opposed a mistrial because of the financial and emotional toll of the pendency of the charges.

The judge found that the Commonwealth had violated the order, because the order required the Commonwealth to furnish copies to defense counsel, not merely make the file available.[6] The judge, however, did not think the violation was intentional, finding instead that it was attributable to "sloppiness." The judge therefore denied the motion to dismiss. See *Donavan* v. *Commonwealth*, 426 Mass. 13, 14-16 (1997); *Commonwealth* v. *Cronk*, 396 Mass. 194, 198-199 (1985).

The judge considered continuing the case. Although the judge did not explicitly use the word "continuance," that is the clear import of his analysis. He found that because of the volume and nature of the undisclosed documents, a continuance would not sufficiently rectify the violation. Regarding the nature of the documents, the judge stated:

> "I find that the investigative file contains materials that any reasonably diligent defense counsel would be very interested in . . . matters that, while they may not be exculpatory, certainly are things that any diligent defense counsel would want to investigate. Maybe they would lead to exculpatory information, maybe they wouldn't; but, certainly, to be well prepared, any diligent defense counsel would want to go over these materials."

Regarding the volume of the documents, the judge found that this was "not the type of thing that . . . could be cured by a

---

[6]The Commonwealth concedes this point on appeal.

brief delay in the trial." The judge therefore rejected a continuance.

At this point, the judge declared a mistrial. Defense counsel immediately interjected, stating that if the judge was going to deny the motion to dismiss, the defendant "unequivocally" and "vehemently" would prefer to proceed with trial. The judge conducted an ex parte sidebar conference, where defense counsel reiterated the financial and emotional toll of the matter on the defendant.[7]

The judge was not persuaded. He repeated his concern about the importance of defense counsel's reviewing the material, and found that to go forward with the trial would seriously risk ineffective assistance of counsel.

Defense counsel again renewed his plea to proceed with trial. He argued that in his estimation the trial was going well; he called the Commonwealth's case "weak" and gave his client a seventy per cent chance of acquittal.[8] He argued that the defendant was willing to waive any future claim of ineffective assistance of counsel on the record, and that he should be entitled to do so. Finally, he expressed concern that the Commonwealth was now familiar with the trial strategy of the defense, which would result in prejudice to the defendant in any retrial.

The judge remained unpersuaded. He did not think exposure of the defendant's trial strategy would result in prejudice, as the arguments against the Commonwealth would not "change over time," and the Commonwealth's trial strategy had similarly been exposed. He also doubted that any waiver of future ineffective assistance claims would be adequate.

2. *Discussion.* We review a judge's determination that there was "manifest necessity" for a mistrial under an abuse of discretion standard. *Lovett* v. *Commonwealth*, 393 Mass. 444, 446 n.3 (1984). *Sullivan* v. *Commonwealth*, 383 Mass. 410, 414 (1981). We do so because the decision to declare a mistrial is "commit-

---

[7]Counsel informed the judge at sidebar that prior to the defendant's arrest, he had made between five and six thousand dollars per month buying merchandise in the United States and reselling it in the Dominican Republic. The transcript of the ex parte conference was impounded by the judge, but a single justice of this court later unimpounded so much of the exchange as related to the defendant's financial status.

[8]The judge responded to this prognosis by stating, "Well, you're optimistic."

ted to the sound discretion of the trial court." *United States* v. *Barbioni*, 62 F.3d 5, 7 (1st Cir. 1995). See *Arizona* v. *Washington*, 434 U.S. 497, 506 (1978). Under an abuse of discretion standard, we look for decisions based on "whimsy, caprice, or arbitrary or idiosyncratic notions." *Bucchiere* v. *New England Tel. & Tel. Co.*, 396 Mass. 639, 642 (1986). We do not disturb the judge's ruling "simply because [we] might have reached a different result; the standard of review is not substituted judgment." *Id.* at 641.

Under the double jeopardy clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment to the United States Constitution, and Massachusetts statutory and common law, no person may be twice placed in jeopardy for the same criminal offense. *Benton* v. *Maryland*, 395 U.S. 784, 793-796 (1969). *Lydon* v. *Commonwealth*, 381 Mass. 356, 366, cert. denied, 449 U.S. 1065 (1980). G. L. c. 263, §§ 7, 8, 8A. "Consequently, once jeopardy has attached, a judge may declare a mistrial over a defendant's objection and commence a new trial only in light of a 'manifest necessity.' " *Commonwealth* v. *Nicoll*, 452 Mass. 816, 818 (2008), quoting *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824). See *Commonwealth* v. *Sholes*, 13 Allen 554, 556 (1866). Cf. *Daniels* v. *Commonwealth*, 441 Mass. 1017, 1018 (2004), citing *Oregon* v. *Kennedy*, 456 U.S. 667, 682-683 (1982) (Stevens, J., concurring) (no double jeopardy bar where defendant requests mistrial). The " 'heavy' burden" of proving that a mistrial was due to "manifest necessity" lies with the Commonwealth. *Commonwealth* v. *Nicoll, supra*, citing *Arizona* v. *Washington, supra* at 505.

In cases involving the declaration of a mistrial over the defendant's objection, a trial judge must balance two competing policy considerations: (1) the defendant's "valued right to have his trial completed by a particular tribunal,"[9] *Arizona* v. *Washington, supra* at 503 & n.11, quoting *Wade* v. *Hunter*, 336 U.S. 684, 689 (1949), and (2) the interest of the public in "fair trials designed to end in just judgments," *Oregon* v. *Kennedy, supra*

[9]The United States Supreme Court also has cast the right in terms of "the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States* v. *Jorn*, 400 U.S. 470, 486 (1971) (plurality opinion).

at 672, quoting *Wade* v. *Hunter, supra*. The term "manifest necessity" is another way of saying that in a particular case, the right of the defendant must yield to that of the public. See *Arizona* v. *Washington, supra* at 506-507 (describing sliding scale of necessity); *Wade* v. *Hunter, supra* ("a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments").

In keeping with the discretionary nature of the doctrine, there is no bright-line rule as to what constitutes manifest necessity. Two general principles, however, have emerged from our cases: "(1) counsel must be given full opportunity to be heard and (2) the trial judge must give careful consideration to alternatives to a mistrial." *Commonwealth* v. *Nicoll, supra*, quoting *Commonwealth* v. *Steward*, 396 Mass. 76, 79 (1985).

In this case, the defendant was given a full opportunity to be heard; he does not argue otherwise. Accordingly, the issue for our determination boils down to whether, on the present facts, the judge gave careful consideration to the alternatives to a mistrial — within the bounds of his sound discretion — before concluding that a mistrial was manifestly necessary. We answer that question in the affirmative and, therefore, conclude that there is no double jeopardy bar and the defendant may be retried.

The alternatives available to a trial judge confronted with a potential mistrial vary depending on the nature of the infraction. In some instances, the only alternatives available are a dismissal, a continuance, or a mistrial. In other instances, there may be the further alternative of proceeding with trial by somehow alleviating the effect of the infraction on the trial process. Examples of this latter alternative are where a limiting instruction will provide an adequate cure, see *United States* v. *Pierce*, 593 F.2d 415, 419-420 (1st Cir. 1979), and where the defendant is able to waive the rights that have been violated, see *Commonwealth* v. *Nicoll, supra* at 820-821. The defendant here argues that proceeding with trial was a viable option because he was willing to waive any future claims of ineffective assistance of counsel arising out of his counsel's failure to review the investigator's file. We disagree.

On the facts of this case, proceeding with trial was not a

valid alternative, despite the defendant's proffered waiver. To proceed without the benefit of over 500 pages of potentially highly relevant material from the investigation would have offended the interest of the public in "fair trials designed to end in just judgments." *Wade* v. *Hunter, supra.* The defendant in this case sought to show that he did not possess, either actually or constructively, the cocaine found at the residence. Central to this argument was the assertion that many different individuals used the building. Given the defendant's theory, it is clear that to proceed with trial in the absence of a large investigatory file containing motor vehicle records, land records, CORI information, and telephone records pertaining to individuals previously unknown to the defense — individuals who may have used the residence — would result in a jury verdict based on, at best, incomplete facts. For the judge to conclude that in such a circumstance the public interest must prevail over the defendant's wish to proceed does not constitute "whimsy, caprice, or arbitrary or idiosyncratic notions." *Bucchiere* v. *New England Tel. & Tel. Co.*, 396 Mass. 639, 642 (1986).

The determination that proceeding with trial was not a viable alternative is further supported by the lack of any prejudice, beyond that found in the typical case, to the defendant. The defendant argues he is prejudiced by the fact that the Commonwealth will know his theory of the case on retrial. Needless to say, this is a concern present in every case involving the grant of a mistrial; as such, it does not constitute the kind of prejudice that would bolster the defendant's claim. See *Arizona* v. *Washington, supra* at 516 n.35 ("respondent does not attempt to demonstrate specific prejudice from the mistrial ruling, other than the harm which always accompanies retrial"). Similarly, and perhaps regrettably, the financial and emotional toll of the pending charges also are an ever-present concern.

Because the judge's decision not to proceed with trial was based on the public's interest in fair proceedings, an interest the defendant cannot waive,[10] the argument that he could waive a future claim of ineffective assistance of counsel is irrelevant.[11]

---

[10]The judge only expressed his concern about ineffective counsel after he had declared a mistrial, in response to defense counsel's renewed exhortations that he not do so.

[11]Whether a defendant may waive a future claim of ineffective assistance of

But even assuming, arguendo, that a defendant may waive the right to effective assistance in some circumstances, we think the judge could properly reject the waiver in the circumstances present here. In the 1988 case of *Wheat* v. *United States*, 486 U.S. 153 (1988), the United States Supreme Court held that a Federal District Court judge did not err in refusing a criminal defendant's waiver of his right to conflict-free counsel. *Id.* at 160-164. The Court reasoned that a trial judge must have latitude to determine when the court's "institutional interest in the rendition of just verdicts in criminal cases" should prevail over the defendant's interest in waiving his rights and proceeding with trial. *Id.* at 160-163. See *id.* at 161 ("trial courts . . . have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment [to the United States Constitution]"). Although a different right is at issue in this case, a similar analysis applies. Here, the experienced trial judge acted within his discretion in concluding that the volume and nature of the unexamined documents removed the option of continuing with trial, despite the defendant's willingness to waive his rights and proceed.

As proceeding with trial was not a valid alternative, the judge was left with the options of either continuing the case, dismissing the case, or declaring a mistrial. A continuance was considered and rejected because the judge found it would take more than a brief delay in the trial to review the documents.[12] Dismissal was

---

counsel is a question that has divided the courts. See King, Priceless Process: Nonnegotiable Features of Criminal Litigation, 47 UCLA L. Rev. 113, 160-166 (1999) (discussing waivers of effective assistance in plea bargains). In the recent case of *Commonwealth* v. *Nicoll*, 452 Mass. 816, 820-822 (2008), this court affirmed a District Court judge's grant of a motion to dismiss on double jeopardy grounds, on the basis that there was no manifest necessity because the judge had not adequately considered alternatives. The judge had erroneously believed trial could not continue with only five jurors. *Id.* at 817. We rejected the argument of the Commonwealth that the right to a six-person jury is unwaivable, and listed a number of rights that a criminal defendant may waive. *Id.* at 820-821. The right to effective assistance of counsel was not among the rights listed, and we do not decide the question here.

[12]Defense counsel originally estimated it would take him three months, and significant help, to review the documents. After the judge declared a mistrial, defense counsel apparently decided he could review the file "forthwith" and stated he had brought "two reams" of paper for that purpose. It was well within the trial judge's discretion to conclude that the review would take three months, based on counsel's original representation.

considered and rejected because the prosecutor's violation of the discovery order was found to be unintentional.[13] See *Donavan* v. *Commonwealth*, 426 Mass. 13, 14-16 (1997). Both of these determinations were well within the judge's discretion.

We conclude that on the facts of this case, the judge did not abuse his discretion in determining that there was "manifest necessity" for a mistrial. There is no double jeopardy bar and the defendant may be retried. The case is remanded to the county court for an entry of a judgment denying the petition.

*So ordered.*

---

[13]At oral argument, counsel for the defendant (who also was trial counsel) attempted to resuscitate his argument that the case should have been dismissed. As the issue was not briefed, we decline to address it in great detail. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). Suffice it to say that dismissal due to prosecutorial misconduct is a "drastic remedy," which, "[a]bsent egregious misconduct or at least a serious threat of prejudice . . . infringes too severely on the public interest in bringing guilty persons to justice." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 210, cert. denied, 464 U.S. 860 (1983). Accord *Commonwealth* v. *Cronk*, 396 Mass. 194, 198-199 (1985).