NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12140


COMMONWEALTH  vs.  ATUNBI BRYAN.



Suffolk.     November 7, 2016. - January 20, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.


Practice, Criminal, Mistrial.  Supreme Judicial Court,
     Superintendence of inferior courts.




     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on February 26, 2016.

     The case was heard by Duffly, J.


     Nicholas Brandt, Assistant District Attorney (Gregory D.
Henning, Assistant District Attorney, also present) for the
Commonwealth.
     Paul J. Davenport for the defendant.


     GAZIANO, J.  The defendant was one of three occupants of a

van that was stopped by a Boston police officer for a traffic

violation (driving without headlights) in the early morning

hours of April 12, 2014.  Police officers issued an exit order,

as a safety precaution, based on certain facts that unfolded

during the motor vehicle stop.  When the defendant, the rear seat passenger, got up to get out of the van, a police officer observed a handgun underneath his right thigh.

At trial, the judge issued an explicit order precluding defense counsel from introducing evidence that the front seat passenger in the van previously had been convicted of unlawful possession of a firearm.[1]  Defense counsel elicited this testimony anyway.  The judge declared a mistrial, over the defendant's repeated objection.

The defendant subsequently moved to dismiss the charges on double jeopardy grounds, contending that there had been no manifest necessity to declare a mistrial, and that the judge erred in not pursuing a less severe option to cure the introduction of the precluded testimony, such as a curative instruction.  A different Superior Court judge denied the motion, and the defendant filed a petition pursuant to G. L. c. 211, § 3, in the county court.  The single justice determined that the trial judge had erred in concluding that there was a manifest necessity to declare a mistrial.  The Commonwealth appealed to this court from the single justice's allowance of the defendant's petition.

Because a determination that a mistrial was manifestly

---

[1] The front seat passenger, Derek Brown, was a codefendant in this case; he pleaded guilty to drug charges after the defendant's trial.

necessary is committed to the sound discretion of the trial judge, a reviewing court examines such a decision only for abuse of discretion. See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). "We do not disturb the judge's ruling 'simply because [we] might have reached a different result; the standard of review is not substituted judgment.'" Cruz v. Commonwealth, 461 Mass. 664, 670 (2012), quoting Bucchiere v. New England Tel. & Tel. Co., 396 Mass. 630, 641 (1986). We conclude that there was no abuse of discretion in the judge's decision to declare a mistrial, on the ground of manifest necessity, after defense counsel intentionally violated her order that the evidence concerning the other passenger's prior conviction was excluded for all purposes, and that the single justice applied a substituted judgment standard in deciding otherwise. Accordingly, we remand the matter to the county court for entry of an order denying the defendant's G. L. c. 211, § 3 petition.

1. Prior proceedings. In order to understand the circumstances surrounding the judge's order prohibiting inquiry into the other passenger's criminal history, we first must address testimony presented at the hearing on the defendant's motion to suppress evidence seized after the stop, and the Commonwealth's motion in limine to exclude such testimony.

a. Motion to suppress. In May, 2015, a Superior Court judge who was not the trial judge (motion judge) conducted an

evidentiary hearing on the defendants' motions to suppress. Boston police Officer Sean Daniely and two other officers testified at that hearing. Daniely testified that at 1:30 $\underline{A}.\underline{M}.$ on April 12, 2014, he stopped a van on Blue Hill Avenue in the Mattapan section of Boston for being operated without its headlights illuminated. There were three occupants in the van: Sedeke Williams, the driver; Derek Brown, the front seat passenger; and the defendant, in the rear bench seat behind the driver. The defendant and Brown were not wearing seat belts.

Daniely obtained identification from the three occupants in order to write traffic citations. He entered their names into his police cruiser's onboard computer (referred to as a mobile data terminal or MDT) and learned that Brown, whom he had recognized as someone he had seen previously, had a prior conviction for a firearms offense. The defendant and Williams did not have criminal records.

While Daniely was at his cruiser, two night club bouncers walked across Blue Hill Avenue and approached Boston police Officer Gregory Vickers, who had arrived to assist.[2] The bouncers told Vickers that they worked at a nearby night club, and had just ejected the occupants of the van from the club. They said that "someone" outside the club reported that one of

_____

[2] The location of the stop was very close to a Boston police station, almost directly across the street from it.    [3] The prosecutor did not object to these questions.

the passengers in the van was in possession of a firearm.

Based on the information about Brown's prior conviction, the bouncers' report, the driver's "nervous" appearance, and a suspicion that the driver might have been operating under the influence of alcohol, Daniely ordered the defendant, Brown, and Williams out of the van. When the defendant got up to get out of the van, Vickers observed a firearm underneath his right thigh.

The motion judge found that the exit order had been justified for reasons of officer safety, and denied the defendant's motion to suppress.

b. Motion in limine. The Commonwealth filed a motion in limine to preclude inquiry at trial into Brown's criminal history. The prosecutor maintained that inquiry into Brown's conviction of unlawful possession of a firearm would be irrelevant, prejudicial, and confusing to the jury. The parties addressed the issue of Brown's criminal history at a pretrial conference on the Friday before the scheduled Monday trial. On the defendant's objection that exclusion of the evidence of Brown's prior conviction would further confuse the jury because they would assume that the information Daniely learned from his MDT concerned the defendant, and not another of the vehicle's occupants, the trial judge asked the parties if they would be able to reach an agreement as to the exclusion of this evidence.

The prosecutor suggested that Daniely be permitted to testify that "based upon certain information . . . he learned from his review of the computer system and conversations he had with these additional people that showed up [the night club bouncers] . . . [h]e made a decision [to issue an exit order]." Defense counsel agreed to this suggestion.  The judge remarked, "All right.  So it sounds like there is no dispute about the Commonwealth's motion as it's written, . . . is that fair?" Defense counsel replied, "That's fair, Your Honor."

c.  Proceedings at trial.  Trial began the following Monday.  In his opening statement, the prosecutor told the jury that they would hear evidence that "the gun was underneath [the defendant's] butt, and his fingerprint was on the magazine stuffed up inside that gun, and those two factors are going to make it abundantly clear at the end of this case that [the defendant] is guilty of these charges."  In his opening, defense counsel disputed the Commonwealth's simplified version of the facts.  He stated, "Don't forget to use your common sense about how the world works, about what's really going on behind the scenes."

Daniely was the first witness.  On direct examination, he testified that he obtained identification from all three occupants of the van in order to issue traffic citations.  He utilized his police cruiser's onboard computer to "research some

information on the three occupants in the car."

On cross-examination, defense counsel asked Daniely if the information obtained from the computer search, "without getting into the substance of what [he] discovered," caused him to focus on "one of the other occupants in the vehicle than my client." Daniely replied that it did not. In response, defense counsel asked, "You did not have a reason to suspect one of the occupants of the van over the others?" The judge sustained the prosecutor's objection to this question.

Defense counsel pursued the line of questioning, and Daniely testified that his computer search revealed that Brown, as opposed to the defendant, had a criminal record.[3] Daniely, however, maintained that the criminal history check did not cause him to suspect Brown more than the other two occupants of any wrongdoing. Defense counsel pressed the issue and asked about the nature of Brown's criminal conviction. The judge sustained the prosecutor's objection.

The judge heard further argument from both lawyers at sidebar. Defense counsel represented that he was attempting to elicit from the arresting officer the reasons that the officer ordered all the occupants out of the van. The judge agreed to allow limited additional evidence on this topic. She ruled that defense counsel would be permitted to ask, without revealing the

---

[3] The prosecutor did not object to these questions.

nature of the conviction, whether there was "something on the computer that made [the officer] worry about the passenger." Defense counsel continued to argue that Brown's firearm conviction was admissible.  The judge did not agree.  She instructed, "It [the firearm conviction] doesn't come in at all is my ruling . . . .  Okay?  Let's be clear about that."  The judge noted the defendant's objection, and told defense counsel to continue with cross-examination without eliciting this inadmissible evidence.

Defense counsel returned to the conduct of his cross-examination and immediately asked Daniely:

Q.:  "So, when you reviewed the information from the MDT, it didn't come up with a criminal conviction for one of the occupants of the van?"

A.:  "It did."

Q.:  "And that was for Derek Brown in . . . the front passenger seat?"

A.:  "Yes, sir."

Q.:  "And that was possession of a firearm?"

A.:  "Yes, sir."

The judge excused the jury for the day to address defense counsel's violation of her evidentiary ruling.  The prosecutor moved for a mistrial.  He argued that the "toothpaste is out of the tube" and that the jury would be unable to disregard information that the judge specifically had precluded.  The

judge initially denied the motion and raised the possibility of a curative instruction, asking the Commonwealth to "tell me about this detail that you say can't be cured," and "Why can't I tell the jury that they are to disregard [the statement]?" After a discussion of the prejudicial impact of Daniely's testimony that Brown had a prior firearm conviction, the prosecutor maintained that the evidence was too prejudicial to cure.

The judge then turned to defense counsel and asked him to respond to the Commonwealth's motion for a mistrial. She said, "I'll hear you, [counsel]. What do you have to say for yourself?" Defense counsel did not address the Commonwealth's motion for a mistrial, and stated instead, "that information should stand in evidence." When the judge again asked defense counsel "what do you have to say for yourself for violating a court order?," he continued to argue that he should be allowed to introduce evidence of Brown's firearm conviction to impeach Daniely, whose testimony at trial differed in some respects from his testimony at a prior hearing. The judge asked defense counsel, two more times, to explain why he disregarded her order, while defense counsel continued to argue that the judge's evidentiary ruling was incorrect, and that the evidence should be admissible for impeachment purposes. Finally, the judge declared a mistrial, observing that defense counsel had "wasted

everyone's time."

    2.  Discussion.  The decision to allow a retrial after a mistrial implicates a defendant's right, under the Fifth Amendment to the United States Constitution, as well as Massachusetts statutory and common-law protections, against being placed in jeopardy twice for the same criminal offense. See Benton v. Maryland, 395 U.S. 784, 793-796 (1969); Commonwealth v. Cassidy, 410 Mass. 174, 176 (1991); G. L. c. 263, §§ 7, 8, 8A.  As a consequence, once jeopardy has attached, a judge may declare a mistrial over the defendant's objection only if there is a manifest necessity to do so. United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824). Commonwealth v. Nicoll, 452 Mass. 816, 818 (2008).  "[I]n view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar" (citation omitted).  Commonwealth v. Steward, 396 Mass. 76, 79 (1985).  See Nicoll, supra (due to importance of double jeopardy protection, Commonwealth bears "heavy" burden).

    A judge's determination that there is a "manifest necessity" warranting the declaration of a mistrial is reviewed under an abuse of discretion standard.  Cruz, 461 Mass. at 669. There is no abuse of discretion "simply because [we] might have reached a different result."  Id. at 670, quoting Bucchiere, 396

Mass. at 641.  See L.L., 470 Mass. at 185 n.27 (abuse of discretion where "judge made 'a clear error of judgment in weighing' the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" [citation omitted]).

Because of the fact-intensive nature of this inquiry, we recognized, in Steward, 396 Mass. at 79, that "[i]t is impossible to create a crisp formula for determining when 'manifest necessity' arises" justifying a mistrial.  See Lovett v. Commonwealth, 393 Mass. 444, 447 (1984) (particular facts of each case dictate determination of manifest necessity).  Under our case law, however, "[t]wo principles emerge for guidance." Steward, supra.  A judge considering whether to declare a mistrial over a defendant's objection is required to (1) provide counsel with a full opportunity to be heard, and (2) give careful consideration to possible alternatives to a mistrial. Nicoll, 452 Mass. at 818 (under second requirement, judge identifies alternative remedy to mistrial and, if one or more exists, carefully considers each one).

Applying these principles to this case, we conclude that the judge's declaration of a mistrial to remedy defense counsel's violation of her order was not an abuse of discretion. As to the first requirement, the defendant argues that the judge declared a mistrial without allowing him an opportunity to

respond. He maintains that the judge interrupted him, abruptly cut him off, and then immediately declared a mistrial. He contrasts his treatment with the treatment that the judge afforded the prosecutor, who was "given considerable time to make [his] argument." We do not agree with the defendant's characterization of the proceedings.

At the beginning of the hearing, the prosecutor represented that all of the attorneys had been in the hallway discussing options to a mistrial. The judge then discussed the necessity of a mistrial with the prosecutor in some detail. At the end of that discussion, she turned to defense counsel and said, "I'll hear you . . . . What do you have to say for yourself?" Counsel did not then directly address the Commonwealth's motion for a mistrial but, rather, argued that the judge's evidentiary ruling was erroneous. He did not respond to the judge's repeated questions to explain himself and his reasons for violating the court's order other than to continue to argue that the judge's evidentiary ruling was incorrect. When the judge reminded defense counsel of the recently concluded sidebar conference where she had ruled that Brown's prior conviction was inadmissible for all purposes, counsel responded that the testimony she had ordered excluded was admissible, "regardless of motions in limine or court rulings," "according to the rules of evidence." Immediately thereafter, the judge declared a

mistrial.[4]

We conclude that the judge provided defense counsel with an opportunity to be heard.  Counsel was unable, or unwilling, to put aside his disagreement with the judge's evidentiary ruling and address the motion for a mistrial.  As a result, he did not avail himself of the opportunity to be heard that was provided to him.  In these circumstances, the judge was not required to continue her futile efforts to convince counsel to address the motion.  Compare Steward, 396 Mass. at 79 (judge declared mistrial and, "almost as an afterthought, unenthusiastically" asked whether defense counsel objected).

We turn to the second requirement, whether the judge fully explored possible alternatives before declaring a mistrial.  The single justice focused on the existence of these alternatives, and the importance of the defendant's interest in proceeding with the trial, in deciding that there was no manifest necessity for a mistrial.  We conclude, however, that in weighing these alternatives, the trial judge did "balance" the "two competing policy considerations" at issue in making a determination of manifest necessity:  the defendant's "valued right to have his

---

[4] The defendant asserts that his repeated responses to the judge's inquiry regarding a mistrial were justified by his obligation to perfect his appellate rights.  Defense counsel objected to the exclusion of this evidence at sidebar and stated the grounds for its admissibility.  See Mass. G. Evid. § 103 (2016).  The appellate record had been preserved, and there was no need for further argument to do so.

trial completed by a particular tribunal" and the "interest of the public in 'fair trials designed to end in just judgments.'" Cruz, 461 Mass. at 670-671, quoting Arizona v. Washington, 432 U.S. 479, 503 & n.11 (1978), and Oregon v. Kennedy, 456 U.S. 667, 672 (1982). As stated, she initially denied the Commonwealth's motion for a mistrial, and sua sponte raised the possibility of a curative instruction. She noted that a mistrial bypasses "another whole procedure here which is a limiting and restrictive instruction," and asked the prosecutor, "Why can't I tell the jury that they are to disregard that?"

The judge also weighed the prejudicial impact of Daniely's testimony that Brown had been convicted previously of a firearms offense. She considered a number of factors related to potential prejudice. First, Brown's prior firearms conviction did not necessarily lead to the inescapable conclusion that Brown possessed the firearm discovered in the van. Second, a police officer was expected to testify that he observed the firearm underneath the defendant on the van's rear bench seat. The judge noted, "I don't see how it becomes the other guy's gun when he's sitting on it." Third, the prosecutor proceeded on alternative theories of joint possession and constructive possession, which would take into account Brown's possible connection to the firearm. Fourth, the judge recognized that the level of prejudice is different when considering the

introduction of evidence that another person had been convicted of a crime, as opposed to evidence that a defendant had been convicted of a crime. Compare Nicoll, 452 Mass. at 822 (judge failed to consider alternative to mistrial where he did not offer defendant option of waiving his right to trial by full jury and proceeding with five jurors as permitted by Mass. R. Crim. P. 19 [b], 378 Mass. 888 [1979]); Jones v. Commonwealth, 379 Mass. 607, 618 (1980) (judge failed to consider alternative to mistrial where he believed that severance of defendants was not available option).

It would have been better practice for the judge to state expressly the available alternatives to a mistrial, if any existed, and the reasons why the available alternatives were not viable options to remedy the cause of the mistrial, and the single justice's decision emphasizes these deficiencies. Nonetheless, we view the judge's declaration of a mistrial, made after she provided counsel with the opportunity to be heard and weighed the available options, as an implicit finding that she considered her proposed curative instruction, and determined that a mistrial was a manifest necessity. See Commonwealth v. Bishop, 461 Mass. 586, 595 (2012) (evidence supported judge's implicit finding that statement was given voluntarily beyond reasonable doubt).

As stated, before declaring a mistrial over a defendant's

objection, a trial judge is required to balance the competing interests of a defendant's right to have his or her case decided by a particular jury, Cruz, 461 Mass. at 670, and the public's interest in "fair trials designed to end in just judgments." Id., quoting Oregon v. Kennedy, 456 U.S. at 672.  A judge is permitted to take into account the cause of the mistrial.  See Jones, 379 Mass. at 620.  "It would be a reproach to the administration of justice if a defendant through his counsel, could pollute the atmosphere of a trial and then turn this to his own advantage on appeal."  Id., quoting Commonwealth v. Lewis, 346 Mass. 373, 379 (1963), cert. denied, 376 U.S. 933 (1964).

In this case, the judge issued an explicit order prohibiting defense counsel from eliciting evidence that Brown previously had been convicted of a firearms offense.  Defense counsel was not content with registering his objection to that order, disregarded the judge's explicit instruction, and inquired into a prohibited topic.  After weighing possible alternatives to a mistrial, the judge concluded that nothing else would suffice.  While there is no "bright-line rule as to what constitutes manifest necessity," Cruz, 461 Mass. at 671, in the circumstances here, the trial judge's decision was not an abuse of discretion. See id. at 672.  Therefore, the single justice's decision, applying a substituted judgment standard,

must be vacated.

3.  Conclusion.  The judgment allowing the defendant's petition pursuant to G. L. c. 211, § 3, is vacated and set aside.  The matter is remanded to the county court for entry of an order denying the defendant's petition.

So ordered.